BRAUN, Appellant, v. THUET BROTHERS, Respondent.

(174 N. W. 807.)

(File No. 4441. Opinion filed November 8, 1919.)

1. **Appeal—Appeal From Judgment—Brief Showing Judgment Entry More Than Year Before Appeal Taken. Ineffective Appeal.**

Where, upon appeal from a judgment and from order denying a new trial entered after trial, appellant's brief shows judgment entered July 5, 1917, and appeal taken August 16, 1918, the appeal, as an appeal from the judgment, was ineffective, statutory time for taking appeal having expired (Laws 1917, Ch. 201, Sec. 3147, Rev. Code 1919.)

2. Same—Appellant's "Suggestions" Criticizing Supreme Court, Whether Constituting Amendment to Brief.

Where Supreme Court made an order requiring appellant to amend his brief to show when, if at all, written notice of order denying a new trial was given appellant, and appellant's attorney, of his own motion, presented a typewritten paper designated "Suggestions," held, such suggestions are not a proper amendment to appellant's brief, the subject matter thereof presenting merely ungracious criticisms of the Court, but Court prefers to treat them as part of the brief.

3. Same—Appeal From Order More Than Sixty Days After Made, Appellate Order to Amend Brief to Show Notice of Order— Right to Appeal From Entered Order Without Notice Thereof —Service of Notice of Order, Effect Re Time for Appeal.

Where appellant's brief shows the order appealed from was made more than sixty days prior to taking an appeal, the record thus failing to show jurisdiction in Supreme Court, that Court may properly require appellant to amend brief to show when, if at all, written notice of the order was given appellant. In making such order, this Court's action was not upon theory that if no notice of the entered order had been served, no appeal would lie therefrom; since the right to appeal from the order as soon as entered, whether notice thereof has or not been served, is undoubted; but if notice has been served it limits time for appeal.

4. Same—Appeal Taken Beyond Statutory Time, Jurisdiction to Entertain—Brief Leaving Jurisdiction Doubtful, Dismissal of Appeal, Or Removing Doubt.

As Supreme Court is without jurisdiction to entertain an appeal not taken within statutory time, it will, where briefs leave jurisdictional facts in doubt, either dismiss appeal, or see that such doubt is removed by ordering amendment of record.

5. Same—Appeal From Judgment and Order Entered After Appeal, More Than Sixty Days After Notice of Order, Effect Re Appeal From Order—Single Appeal, Limitation Re Filing Judgment.

Where (in Anderson v. Ketcham, 41 S. D. 515, 171 N. W. 764) an appeal was taken from both a judgment and from an order denying a new trial entered after judgment, the fact that the order was dated October 26, and notice thereof served November 28 and appeal taken April 30 following does not

vitiate the appeal from both the judgment and order, since, the appeal having been taken within statutory period for taking appeals from judgment, and such appeal being but a single appeal, the time for taking same was controlled by date of filing judgment; and the criticism of appellant's attorney in case at bar, for requiring amendment to brief on present appeal to show when, if at all, written notice of order denying new trial was given appellant, is not pertinent, especially in view of the fact that said counsel, in purporting to set out the record in the Anderson case reciting perfecting of appeal, omitted therefrom all reference to the appeal from the judgment. Nor is said counsel's insistance that the Court in said Anderson case should have passed upon the motion to dismiss, in writing the opinion, tenable, in view of the line of decisions of this Court establishing the rule distinguishing between a single and a double appeal.

6.  **Same—Notice of Order as Limiting Time for Appeal—Appellant's Counsel Procuring and Filing Order, Whether Notice Thereof —Waiver—Statute.**

Notice to appellant through the fact that his counsel prepared, procured judge's signature to and filed the order appealed from, is not notice of the order within meaning of Laws 1917, Ch. 201, Sec. 3147, Rev. Code 1919; mere knowledge of the order not being such notice. The clear purpose of the statutory notice is to provide a way by which one party may fix a limit to the time in which the other may appeal, and respondent may not adopt any service by his adversary as a substitute for the statutory notice; nor is procuring and filing of an order a waiver of such notice.

7.  **Same—Error—Evidence, Statement in Respondent's Brief, Presumption Re Omitted Evidence in Appellant's Brief.**

Where much of each party's testimony and various instructions were by oversight omitted from appellant's brief; Supreme Court will, in absence of reply brief, assume that respondent's brief contains a true statement of the portion of the record it purports to give, and will disregard appellant's brief purporting to cover the same matter.

8.  **Damages—Failure to Advance Money to Pay Debts and Buy Seed—Claim for Interest on Amount Not Advanced—Instructions Re.**

In a suit upon a promissory note, with counterclaim arising from plaintiff's failure to advance defendant the full amount of the note, including loss of crops through inability to purchase seed with said money and interest on the amount not advanced, held, that there was no evidence supporting the claim for loss of crops. Held, further, that, court having instructed that plaintiff could not recover $720 not advanced thereunder or

interest thereon, it follows defendant could not recover interest on the $720.

9. **Same—Counterclaim Against Another for Failure to Advance Full Loan—Plaintiff's Further Claim for Expenditure Re Mortgaged Stock Plaintiff's Liability Under Contract, Instruction Re No Evidence Re Contract—Whether Prejudicial Error—Evidence Construed.**

Where defendant counterclaimed in a suit upon a note, for plaintiff's failure to advance full amount of note, whereby defendant was unable to purchase with said money certain seed and feed, plaintiff also claiming damages for caring for certain cattle under mortgage security on the note, court rightfully instructed that before it could allow such counterclaim it must find a contract whereby plaintiff became liable to pay the expenses for which defendant sought reimbursement; and, there being no evidence of any such contract, held, that the instruction was prejudicial error, it being morally certain in absence of items of defendant's claims that exactly offset plaintiff's claim, and of the further fact that if jury followed court's instruction it must have found against plaintiff because of want of contract upon which to base its claim—that jury found against both parties on their claims; the evidence warranting such a verdict. Held, further, that, it being possible that jury may have found equal damages for both and offset same, and as such finding in plaintiff's favor would have been error, the instruction was prejudicial error unless there was no evidence to support verdict for plaintiff; and there was no such evidence, and court would have been justified in directing the verdict returned.

10. **Same—Evidence, Sufficiency—Cattle Purchase Through Alleged Agent—Defendant's Counterclaim for Dead Stock Under Agency Contract to Reimburse—Agent's Authority, No Evidence Supporting—Renewal of Debt Without Deducting Damages, Effect Re Defendant's Right.**

In a suit upon a note secured by mortgage on cattle, defendant counterclaimed for damages under an alleged contract between him and G, the alleged agent of the vendor, to reimburse defendant for loss from death from certain causes of cattle purchased. Held, there being no evidence that G was authorized to bind or that he purported to bind plaintiff, and defendant having renewed the debt without deducting the claim for damages, and having made no explanation why he did not demand credit therefor, he could not recover upon the counterclaim.

11. **Same—Failure to Advance Full Amount of Note in Suit, Counterclaim for Resulting Loss of Corn Feed—No Evidence Sustaining Alleged Prospective Profit, Effect.**

Where, in a suit on a note, defendant counterclaimed for damages resulting from failure of plaintiff to advance full amount of a renewal note and for his resulting inability to purchase corn with which to feed cattle whose purchase money was in part represented by the note, held, there being no evidence that more than about $100 of the alleged shortage of $800 in the advance was to be advanced for corn purchase, and no evidence upon which jury could find there was any profit in feeding of the corn that would have been purchased for the $100, jury properly failed to sustain the counterclaim.

McCoy, J., not sitting.

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Action by Wilhelm F. E. Braun against William Thuet and Frank Thuet, co-partners as Thuet Brothers, to recover upon a promissory note secured by mortgage on livestock. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

A. W. Wilmarth, for Appellant.

C. A. Kelley, and James Byrnes, for Respondent.

(1) To point one of the opinion, Respondent cited: Chap. 201, Laws 1917; Union Inv. Co. v. Schonebaum et al., 167 N. W. 398.

(8) To point eight, Appellant cited: 8 Ruling Case Law, p. 463.

WHITING, J. [1] The appeal herein purports to be from a judgment and from an order denying a new trial entered after the judgment. From appellant's brief it affirmatively appeared that the judgment was entered July 5, 1917, and the appeal taken August 16, 1918. It was thus disclosed that the attempted appeal, so far as it purported to be an appeal from the judgment, was ineffective because taken after the expiration of the statutory time limited for appeal. Chapter 201, Laws 1917; section 3147, Rev. Code 1919; Union Investment Co. v. Schonebaum, 40 S. D. 378. 167 N. W. 398. The appeal, if effective at all, was but an appeal from the order. Keyes v. Baskerville, 170 N. W. 143. But it also appeared that the order was made more than 60 days prior to the taking of the appeal. The record therefore failing to affirmatively show jurisdiction in this court, we saw fit to and did make an order requiring appellant to amend his brief so as to show

"when, if at all, written notice of the order denying new trial was given to appellant." In obedience to said order appellant amended his brief by the insertion of a statement which concludes as follows:

"Appellant's attorney thereby had written notice of the filing of the order overruling motion for new trial on the 7th day of June, 1918."

[2] Appellant also, of his own motion, presented to this court a typewritten paper which he designates "Suggestions." Such "suggestions" are not a proper amendment to appellant's brief, as the subject-matter thereof, instead of presenting any legal ground why we should hold the appeal effective, consists rather of what might be deemed ungracious criticisms of this court. We prefer, however, to treat them as a part of appellant's brief.

[3, 4] Counsel chides us for issuing our order requiring the amendment, and advises us that, so far as his practice has disclosed, and we are reminded of its duration and extent it is unusual for an appellant's brief to reveal the date of service upon appellant's counsel of notice of the order denying a motion for new trial. Counsel seems to be laboring under the impression that, in requiring the amendment, this court was of the opinion that, if no notice of the order had been served, no appeal would lie from the order even though it had been entered. Such was not the theory of this court. There is no doubt whatsoever of a party's right to appeal from the order as soon as it is entered whether notice of the order has been served or not; but, if notice has been served, such service limits the time for appeal. As this court is absolutely without any jurisdiction to entertain an appeal that is not taken within the statutory time, we deem it not only our right, but our duty, whenever, as in this case, the briefs upon appeal leave the jurisdictional facts in doubt, to either dismiss the appeal or see that such doubt is removed.

[5] Counsel also chides us for not having, in the case of Anderson v. Ketcham, reported in 171 N. W. 765, expressly ruled upon his motion to dismiss the appeal therein. Counsel asserts that, at the oral argument of said case, we announced that such motion "would be passed upon in writing the opinion."

We do not question counsel's statement, though we have no recollection of any such announcement. But such omission, even though deemed by counsel censurable, would hardly demand our present attention, were it not for the further fact that counsel contends that his motion in the Anderson Case presented the identical question now before us, and that, by disregarding such motion and reversing the case on its merits, we in effect held that, under facts identical to those now before us, an appeal from an order was effective. It is apparent from counsel's "suggestions" that he believes we should have sustained his motion in the Anderson Case, and that therefore, under his concession as to notice upon him, we should dismiss the present appeal, were it not that, having erred in the Anderson Case, we should follow our erroneous decision therein— nothing else would justify his present reference to the Anderson Case. We therefore feel that the situation thus presented justifies, even though it does not require, us to refer to the jurisdictional facts in the Anderson Case, and to supply the alleged omission in our opinion therein.

In the brief of the party appellant in the Anderson Case it was stated:

"Within the time limited by law therefor, the objector duly perfected her appeal to the Supreme Court of the state of South Dakota, from said judgment and decree so entered herein, and from the whole and each and every part thereof, and from said order overruling and denying the objector's said motion for a new trial, and from the whole and each and every part of said order in the manner provided by law."

In his answering brief, counsel who is now chiding this court, quoting from the above statement, omitted everything from the word "Dakota" down to and including the word "and," preceding the words "from said," and commenced the same word "from" with a capital. He thus made such statement to read as though such appeal had been taken from the order only, and the appellant therein was asserting that it had been taken in time. After so emasculating the statement, counsel said, "This statement is not true," and he called attention to the fact that the order was dated October 26, 1917, notice

thereof served November 28, 1917, and appeal taken April 30, 1918—much more than 60 days after such notice. If the facts had been as thus set forth in counsel's brief, the appeal, being then from the order *alone,* would have been ineffective, and his motion should and would have been sustained. But the appeal was in fact taken from the judgment and from an order entered after the judgment; moreover, the appeal was taken within the time prescribed for taking appeals from judgments. Such appeal was therefore but a single appeal, and the time for taking same was controlled by the date of the filing of the judgment. It follows therefore that such appeal was "perfected within the time limited by law." The law was so declared in a most exhaustive opinion written by the late Justice Corson. McVay v. Bridgman, 17 S. D. 424, 97 N. W. 20. We can hardly think counsel to have been ignorant of the opinion in the McVay Case, as we find it referred to in the opinion in Gordon v. Kelley, 20 S. D. 70, 104 N. W. 605, a case wherein counsel appeared, in which latter opinion the court called specific attention to the fact that in the McVay Case it had held that an appeal from a judgment and from an order denying a new trial was but a single appeal. The McVay Case was followed, and reference made thereto by this court, in Northwestern Mtg. T. Co. v. Ellis, 20 S. D. 543, 108 N. W. 22, and again in Peters v. Lohr, 24 S. D. 605, 124 N. W. 853. This court, unless because of the alleged oral announcement from the bench, was not called upon, in its opinion in the Anderson Case, to restate a rule of law so long and fully established. The appeal was timely taken in the Anderson Case. The jurisdictional facts therein were materially different from those in the case now before us, the attempted appeal from the judgment herein being ineffectual, and the appeal from the order standing as though there had been no attempt to appeal from the judgment.

[6] It follows that, if appellant is bound by that part of his counsel's amendment wherein counsel states that he "had written notice of the filing of the order * * * on the 7th day of June, 1918," we must hold that the attempt to appeal was abortive. Brooks v. Bigelow, 9 S. D. 179, 68 N. W. 286. But a reading of the whole amendment shows that the "written

notice" that counsel had was not a notice served on him by respondent, but notice which he received through the fact that he prepared the order denying the new trial, procured the signature of the judge thereto, and filed it in the clerk's office. Is this sufficient to constitute the notice contemplated by chapter 201, Laws 1917, § 3147, Rev. Code 1919? We think not. As held by this court in Cowie v. Harker, 32 S. D. 516, 143 N. W. 895, the word "notice" as used in this section should not be interpreted to mean merely knowledge. This court held in First Nat. Bk. v. McCarthy, 13 S. D. 356, 83 N. W. 423, and in Clark Imp. Co. v. Wadden, 29 S. D. 195, 136 N. W. 111, that the service of a decision was not enough where the law required service of "notice" of such decision. What is the purpose of requiring the "notice"? It is certainly not merely that the defeated party may be advised of the order. The clear purpose is to provide a way by which one party to a cause may fix a limit to the time within which the other party may appeal from an order. Without such notice a party may appeal at any time after the order is entered—in fact he may, as appellant evidently intended to do, secure the entry of the order to the end that he be able to unite, in a single appeal, an appeal from the order with one from the judgment. As stated by the court in McGruer v. Abbott, 47 App. Div. 191, 62 N. Y. Supp. 123:

"If the prevailing party wishes to take advantage of this short bar, and end further litigation, it is optional with him, but he can do so only in the way here pointed out. He is not at liberty to adopt any service of papers by his adversary as a substitute for the service in this section required. * * * obviously, such service by the appellant was not made to start the time running against himself."

If service of the order by appellant would not be a waiver of notice, certainly the procuring and filing of an order would not be such a waiver. No one would contend that counsel so intended. It was not a waiver of notice, and it certainly was not the notice contemplated by statute. As supporting our views, see, also, Rohr v. Linch, 78 Misc. Rep. 45, 137 N. Y. Supp. 752; Orton v. Noonan, 32 Wis. 220; Mallory v. See, 129 Cal. 356, 61 Pac. 1123.

[7]   A large portion of the testimony of each party and a large portion of the instructions were, apparently through oversight, omitted from appellant's brief. There being no reply brief, we assume that respondent's brief contains a correct statement of that portion of the record which it purports to give, and we therefore disregard entirely that portion of appellant's brief purporting to cover the same matter. We use the term "respondent" and not "respondents" for the reason that while there were two defendants named in the pleadings, one died before trial, and the cause proceeded as against the survivor.

Appellant bought of one Godfrey 42 head of cattle; he claims that later he bought 9 more of respondent. Godfrey and respondent testified that the nine were bought of Godfrey. Appellant claims that, as a part of the contract for the sale of the 42 head, Godfrey agreed that if any of the cattle died from certain named causes, he (Godfrey) would stand the loss. It is also appellant's claim that Godfrey was but the agent of respondent in the sale of these cattle; that he, appellant, afterwards advised respondent of the agreement made by Godfrey; and that respondent agreed to abide by it. Appellant testified that three head died of the causes named, and that his damage thereby was $150. This he seeks to recover.

After the sale of the 9 cattle a settlement was made for the whole 51. As a part of such settlement appellant gave a note for $2,450 and a chattel mortgage on the cattle. This note and mortgage ran to respondent. When this note fell due the cattle were unfit for sale. In settlement of said note, and to secure an extension of time to pay the indebtedness, appellant gave resspondent a new note with security. The new note was for some $800 more than the amount due on the first note. Appellant testified that this $800 was to be advanced him to pay debts he was then owing, to pay expenses of his son coming to help care for the stock, to pay for seed, and to pay for corn to feed the cattle. No part of this $800 was furnished him except that $80 was advanced to the son. Appellant claims that he was unable to get money elsewhere, and that he lost a large amount of money from loss of crops through his inability to

get seed, and from loss in the selling value of the cattle because of inability to get corn to properly feed them.

Appellant also claims as further damages 7 per cent. per annum on the money not advanced.

Respondent testified to expenses which he incurred in looking after the mortgaged cattle. He seeks, as a counter claim, to recover the amount of such expenditures.

[8] There was absolutely no merit in appellant's claim for loss owing to want of seed, or for interest on the $720. There was no evidence to support the first. The court advised the jury that respondent, who still held the note against appellant, could not recover on said note either the $720 or interest thereon; it follows that appellant could not recover interest on the $720.

The court submitted to the jury appellant's claims of damages from death of cattle, and from want of corn to feed cattle; it also submitted respondent's counter claim. The jury returned a verdict for respondent, but without money damages.

[9] Appellant assigns as error the trial court's submitting to the jury respondent's counterclaim. The court rightly advised the jury that, before it could allow such counterclaim, it would have to find a contract between the parties whereby appellant became liable to pay the expenses for which respondent was seeking reimbursement. As there was absolutely no evidence of any such a contract, there was nothing to go to the jury. Was the error prejudicial? It was not unless the jury actually found some damages for respondent. We feel morally certain—in view of the fact that there were no items of appellant's claims that exactly offset respondent's claim, and the further fact that, if the jury followed the court's instructions, it must have found against respondent because of such want of contract upon which to base his claim—that the jury found against both parties on their claims. It is perfectly clear that the evidence would warrant such a verdict. But as it is possible that the jury may have found equal damages for both and offset same, and as any such finding in favor of respondent would have been error, the error in instruction was prejudicial, unless there was no evidence to support a verdict for appellant. There was no evidence to support such a verdict, and the trial court

would have been justified in directing the very verdict which was returned.

[10] There was no evidence that Godfrey had any authority to bind respondent, and no evidence that he purported to bind him. After the cattle died appellant renewed the debt without deducting the $150, and he made no explanation whatsoever of why he did not demand a credit for same.

[11] There was no evidence from which it could be found that more than some $100 of the $800 was to be advanced for the purchase of corn. There was no evidence from which the jury could find that there would have $1 of profit in the feeding of what corn could have been purchased for $100.

The judgment and order appealed from are affirmed.

McCOY, J., not sitting.