C. M. GUSTAFSON, Appellee,

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant.**

No. 72–1178.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1972.

Decided Jan. 10, 1973.

Rehearing Denied Jan. 26, 1973.

**1058**

John B. Wehde, Huron, S. D., for appellant.

Charles Rick Johnson, Gregory, S. D., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH, District Judge.*

STEPHENSON, Circuit Judge.

This appeal by General Motors Acceptance Corporation (GMAC) results from a judgment by the trial court awarding Gustafson $186,000 in damages for slander by GMAC which interfered with and caused Gustafson to lose

his General Motors car and truck dealership. The trial court's memorandum decision fully sets forth the facts of this case at 337 F.Supp. 406 (D.S.D.1972) and they will be restated here only as needed to resolve the issues of this appeal.

GMAC claims that the trial court erred in its findings that the statements made by its representatives to the Pierre, South Dakota bank officials concerning Gustafson were "false" statements and the proximate cause of Gustafson's loss of his dealership. GMAC also contends that the statements made were privileged under South Dakota law and that the measure of damages applied by the trial court was clearly erroneous.

GMAC financed the wholesale purchase and retail sales of new and used vehicles for Gustafson's General Motors car and truck dealership from 1962 until the sale of the business on September 22, 1969. 1968 was a poor year for the dealership and on a few occasions Gustafson got behind on his payments to GMAC for money due on cars sold by the dealership. In each instance, however, payment was made following a visit and inspection by GMAC representatives. Also in 1968, Gustafson apparently became unhappy with his financing arrangement with GMAC and transferred part of it to a local Pierre, South Dakota bank with whom the dealership had obtained a line of credit for borrowing purposes.

On June 24, 1969, two GMAC representatives went to the dealership after receiving a report that a check from Gustafson payable to GMAC in the amount of $1,824.66 had been returned for insufficient funds by a bank. A cursory inventory disclosed that a few cars had been sold for which no payment had yet been made to GMAC. The GMAC representatives then informed Gustafson that the dealership owed GMAC over $41,000. Gustafson denied this, stating the correct figure was more like $10,000.

* Eastern District of Michigan, sitting by designation.

GMAC cancelled Gustafson's credit with General Motors immediately. The representatives also visited Gustafson's Pierre bank where they told bank officials that Gustafson was $41,000 "out of trust", and suggested that they should immediately check the vehicles they were financing for Gustafson. They further inferred that Gustafson had a silent partner who was taking money out of the dealership.

Cancelling the dealership's credit with General Motors halted the delivery of cars Gustafson had already sold. GMAC also stopped payment on checks due Gustafson. Gustafson attempted to borrow $10,000 from the Pierre bank but was refused further borrowing from the bank until the problem with GMAC was resolved.

Gustafson later obtained a $10,000 loan from the bank upon the promise that he would sell out within 90 days to assure the bank of recovering its money. In his action below, Gustafson charged that the statements made to the bank officials were false and slanderous, forced him to lose and sell his business and injured his reputation.

## SLANDEROUS STATEMENTS

GMAC contends that the finding its representatives slandered Gustafson was clearly erroneous in that the statements were either shown to be true or were not proven to have been made at all.[1]

We, of course, view the evidence in the light most favorable to the plaintiff below. With that in mind, a thorough review of the record convinces us that the fact findings of the trial court with respect to the statements made are not clearly erroneous.

■ In regard to the statement to the bank officials that Gustafson was $41,000 "out of trust," GMAC attempted to prove the truth of this statement at trial. GMAC's credit supervisor at Huron, South Dakota, Biske, testified that on June 24, 1969, he was the person who determined Gustafson to be $41,000 out of trust. By assuming that other checks from Gustafson payable to GMAC would also be returned for insufficient funds, these checks plus the amounts due on four cars sold but yet not paid for by Gustafson, accounted for an indebtedness of $33,393.72 owed GMAC. Biske testified that he had payment stopped on checks sent out prior to June 24 and payable to Gustafson in the amount of $13,632.25. Additional "self-help" measures included accepting and holding the proceeds of $4,724.74 worth of conditional sales contracts and granting delayed payment privileges on some of the cars Gustafson had sold to the state and city of Pierre. Biske admitted that at the time the $41,000 figure was being used by the parties in discussions on June 24, he really "didn't have enough information to know what was right or not." Biske further admitted that "after all the fuss and the dust settled, there was $9,000 that [Gustafson] had to dig up." We are satisfied that the trial court's determination the statement was false is not clearly erroneous.

■ We are also satisfied that the trial court's determination that GMAC's slanderous acts were the proximate cause of Gustafson's damages is not clearly erroneous.

## PRIVILEGED COMMUNICATIONS

GMAC claims that the trial court erred in its determination that the state-

1. South Dakota Compiled Laws 20–11–4 (1967) provides in pertinent part:
   Slander defined.—Slander is a false and unprivileged publication, other than libel, which:

   \*　　\*　　\*　　\*　　\*

   (3) Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqual-

   ification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;

   \*　　\*　　\*　　\*　　\*

   (5) By natural consequence, causes actual damage.

ments were not privileged communications. South Dakota Law, of course, controls the determination of the merits of this diversity case. South Dakota Compiled Laws 20–11–5 (1972) reads in pertinent part:

Privileged communications—Malice not inferred from publication.—A privileged communication is one made:

\*    \*    \*    \*    \*    \*

(3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;

\*    \*    \*    \*    \*    \*

In the cases provided for in subdivision (3) and (4) of this section, malice is not inferred from the communication or publication.

"This provision is merely declaratory of the general doctrine of qualified privilege which exists independently of any statute." Parr v. Warren-Lamb Lumber Co., 58 S.D. 389, 236 N.W. 291, 293 (1931).

■ ■ We assume, and it would appear, that GMAC's representatives had a qualified privilege under 20–11–5 to report Gustafson's financial problems to the bank, a fellow creditor. The qualified privilege, however, was destroyed by a finding of malice by the utterer of the slanderous statements. Waln v. Putnam, 196 N.W.2d 579 (S.D.1972). The burden of proving malice, was on Gustafson and it was incumbent upon him to establish that the statements were made, under the surrounding circumstances, from an improper motive. *Parr, supra*, at 293. See also Williams v. Hobbs, 81 S.D. 79, 131 N.W.2d 85, 88 (1964). Malice, of course, was a question for the trier of fact. Egan v. Dotson, 36 S.D. 459, 155 N.W. 783, 788 (1915).

■ ■ There is evidence in the record to support a finding of malice. GMAC was a competitor of the bank for Gustafson's financing needs. It knew very well that Gustafson was unhappy with his arrangement with GMAC and that he had transferred some 50% of his used car financing to the bank. From this and other evidence it can reasonably be inferred that the statements were designed to cause the bank to terminate its relationship with Gustafson. As the trial court stated, "Although a creditor may complain to another creditor that a debtor is slow in making payments, he has no right to impute dishonesty or other evil motive to the debtor. Sullivan v. Strathan-Hutton-Evans Com. Co., 152 Mo. 268, 53 S.W. 912 (1899)." *Gustafson, supra*, at 409. We conclude that the trial court's finding of malice on the part of GMAC was not clearly erroneous, and therefore, no qualified privilege for the statements existed.

## DAMAGES

In determining damages the trial court found that ". . . It is the uncontroverted testimony that as a result of the defamatory remarks the plaintiff had to sell his business in a restrictive period of time, causing him to lose approximately $25,000.00;" plaintiff testified he was earning $17,500 per year when he was forced out of business and that he had intended to operate the business until he was 70 years of age, which would be for 14 years; plaintiff is presently earning from new business ventures $6,000 per year; ". . . a reasonable and conservative estimate of his loss of business earnings resulting from the slanderous remarks is $11,500 per year for the 14 years."

The Court awarded plaintiff damages in the amount of $186,000.00, which we read under the findings as being $25,000.00 for loss in value because plaintiff was forced to sell his business in a restrictive period, plus 14 years × $11,500 per year = $161,000, or a total award of $186,000.00. 337 F.Supp. at 409–410.

Although not specifically labeled as fair market value, the fair inference from plaintiff's testimony is that he had to take $25,000.00 less than the fair market value of his business because he had to sell within 90 days. No other evidence was offered with respect to the loss of value because of the forced sale.

GMAC in this appeal does not challenge the trial court's finding with respect to the amount of the loss in value of the business. Rather, appellant contends that any loss of value of plaintiff's business was not caused by any wrongful or slanderous act of GMAC, but instead was caused because of plaintiff's financial distress which occurred long before the alleged slanderous statements were made. The record does indicate Gustafson had been having difficulty borrowing money, checks had been previously dishonored for insufficient funds, and in general, he had been operating on a short cash basis for two years.

█ █ It must be kept in mind that a business already in financial distress may well suffer greater injury from slanderous statements with respect to its alleged financial irresponsibility than would a financially sound institution. Grove v. Dun & Bradstreet, Inc., 438 F. 2d 433, 439 (CA3 1971). We cannot say from this record that the trial court's determination that as a result of GMAC's defamatory remarks Gustafson was forced to sell his business in a restrictive period of time at a loss of $25,000, is clearly erroneous.

It is our view, however, that the balance of the damage award must be set aside.

█ An injured seller of a business may not be compensated for the difference between the fair market value of his business and the amount actually received and then also be compensated for the loss of income he would have received from the business in the future. Albrecht v. Herald Company, 452 F.2d 124, 131 (CA8 1971).

█ █ In arriving at a fair market price for a business, both the buyer and seller are deemed to have considered the business' prospects for future earnings and incorporated such into their agreed on price. Applying *Albrecht* to the instant record, the $25,000 award must be considered full compensation for Gustafson's losses, because the $25,000 award, plus the amount received from the sale of the dealership ($45–50,000) constitutes the fair market value Gustafson would have secured from a willing buyer on the open market. The additional $161,000 award for loss of future income from the dealership was indeed duplicitous, and must be vacated.

After a full review of the record, we are satisfied the evidence does not support an award of more than the $25,000 allowed by the trial court for loss of value of the business as a result of the forced sale.

Affirmed in part. Reversed and remanded with instructions to enter a judgment in favor of appellee and against appellant in the sum of $25,000.