**Edward C. REA and 22 Ford Inc.**

v.

**FORD MOTOR COMPANY.**

Civ. A. No. 67–286.

United States District Court,
W. D. Pennsylvania.

Dec. 18, 1975.

Robert E. Wayman and Thomas M. Kerr, Pittsburgh, Pa., for plaintiff.

John H. Morgan and Frank Seamans, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

### RETRIAL OF ISSUE OF DAMAGES FOR VIOLATION OF AUTOMOBILE DEALERS' DAY IN COURT ACT CLAIM

KNOX, District Judge.

The history of this protracted litigation, which has now been pending for eight and one-half years, is fully set forth in the decision of this court denying motion for new trial and judgment NOV reported at 355 F.Supp. 842 (W.D. Pa.1973) and in the decision of the Court of Appeals for this Circuit, *Rea v. Ford Motor Co.*, 497 F.2d 577 (1974).

A short resume of this history is, however, necessary for an understanding of the problem presently before the court. Edward C. Rea and the corporation known as 22 Ford, Inc. in which he, Rea, was the principal stockholder sued Ford Motor Company on a variety of claims. As finally presented at the first trial of this action, these included a claim for damages for breach of an oral contract to convey real estate, claims for treble damages under the Sherman Act, 15 U.S.C. §§ 1 and 2, claims for violation of the Robinson Patman Act and a claim for damages for violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 et seq. At the conclusion of the evidence, this court directed a verdict for the defendant Ford on claims under the Robinson Patman Act, 15 U.S.C. §§ 13(d) and (e). We subsequently held the verdict excessive to the extent that it exceeded $1,000,000 and directed a new trial unless a remittitur was filed. Plaintiffs did file a remittitur, but the defendant took an appeal.

On appeal, the Third Circuit denied recovery for breach of oral contract to convey real estate and also denied recovery for violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2 to the extent that the verdict was based upon the operation of company-owned and dealer-development outlets in the Pittsburgh, Pennsylvania, area. The court did hold, however, that the facts justified the jury's finding as to liability for violation of the Automobile Dealers' Act and that there was sufficient evidence of price fixing between Ford and the national rental companies, Hertz and Avis, to justify this claim being submitted to the jury. The court, however, decided that it could not determine to what extent the jury's verdict was based upon violations of the Sherman Act other than price fixing with Hertz and Avis and directed that a new trial concerning this price fixing be awarded. The court directed with respect to the Automobile Dealers' Act that a new trial on the issue of damages only be awarded. This new trial on damages has been held and is before the court presently for determination on the merits.

With respect to the price fixing arrangements between Ford on the one hand, and Hertz and Avis, the national car rental companies, on the other, trial of this issue was severed from the issue of damages under the Automobile Dealers' Act, and considerable discovery was had in preparation for retrial. The plaintiff has, however, elected not to make discovery of certain evidence in accordance with the orders of this court (which directed that making its records available to the defendant would be sufficient) and rather than make such discovery withdrew the cause of action for such price fixing. Therefore, the determination of damages for violation of the Automobile Dealers' Act—if, as and when finally decided—will finally put an end to this lengthy litigation.

The parties agreed that the question of damages for violation of the Automobile Dealers' Act would not require a jury but the same was submitted to the court for trial non-jury.

Violation of the Automobile Dealers' Act, as to which the evidence has been held by the Circuit to be sufficient to justify the jury verdict on liability, is based upon the following facts, as recited in the opinion of the circuit, 497 F.2d 577 at 582.

"Edward C. Rea, Inc. was given a franchise as a Ford dealer in Monroeville in February 1964. The Ford

Sales Agreement which established the terms and conditions of that franchise provides that 'the Dealer reserves the right to make purchases from others without obligation or liability of any kind to the Company, provided that the Dealer shall not be relieved of any duty, obligation, or responsibility assumed by the Dealer under this agreement . . . .' At that time Rea was the principal stockholder in another company, then known as Rea Oldsmobile, Inc. ('Rea Olds'), which conducted an Oldsmobile dealership in Wilkinsburg. During the negotiations for the granting of the Ford franchise to Edward C. Rea, Inc., Rea represented to Ford that he would acquire the capital necessary for the operation of the Ford franchise at Monroeville by liquidating the assets of Rea Olds, and Ford required Rea to sign a letter stating his intention to give up the Oldsmobile dealership and to send a letter to Oldsmobile stating his intent to resign.

"For a time in 1964 Edward C. Rea, Inc. operated in a temporary facility because a new Ford facility, whose preparation and use required a substantial amount of capital, was not yet available. Sometime between February and August 1964, before the new facility was available, Rea suggested to McClanathan, then district manager for Ford, that Rea Olds might not liquidate its operation. Rea testified that in response McClanathan threatened to stop shipping Ford automobiles to the Monroeville dealership unless Rea Olds resigned its Oldsmobile franchise. McClanathan denied making the alleged threat to withhold cars, but he did testify that he told Rea that he thought the Oldsmobile dealership should be liquidated in order to assure an adequate source of capital for the conduct of the Ford dealership in the new Monroeville facility. Thereafter Rea Olds resigned the Oldsmobile franchise, retained part of its assets, and sold the remainder to another corporation. Sometime after August 31, 1964, Rea Olds changed its name to 22 Ford, Inc., the present plaintiff, and took over operation of the Ford Monroeville dealership in its new facility. The Ford franchise agreement at Monroeville was assigned to 22 Ford on March 9, 1966, by Edward C. Rea, Inc., which was then dissolved. This assignment was accepted and consented to by Ford on April 21, 1966."

The court has held a full hearing on the question of damages resulting from the violation of the Automobile Dealers' Act, liability having been determined by the jury, and has also held full argument and considered extensive briefs with respect thereto and is now prepared to decide the matter on the merits. This apparently simple question bristles with difficult problems.

(A) *Limitation on Amount of Damages by Jury's Verdict in First Trial.*

In the first trial the jury, having found that Ford had violated the Automobile Dealers' Act, awarded plaintiffs $350,000 damages representing the loss of profits as a result of the forced sale of the Oldsmobile franchise. The Circuit held that defendant was not entitled either to entry of judgment in its favor or to a new trial to determine the question of liability on this claim. After discussing the question of liability, the Circuit then went on to hold as follows:

"While we thus conclude that the jury's finding that Ford violated the Automobile Dealers' Act should be sustained, we hold that its award of damages thereunder is excessive and must be set aside. The jury's award of $350,000. apparently represents a straight-line projection of Rea Olds' estimated profits over the period from its termination of the GM franchise in September 1964 to the time of trial in May 1972, based upon a formula devised by Dr. Staelin, 22 Ford's expert. It has been held that an automobile dealer may recover damages for the loss of future profits resulting from the manufacturer's wrongful conduct

under the franchise agreement. See *American Motors Corp. v. Semke,* 384 F.2d 192, 199–200 (10th Cir. 1967). However, the jury's award here failed to reflect the fact that in 1964 Rea Olds sold certain of its assets for $60,-000. and that this cash and the remaining assets of the company were thereafter devoted to the operation of the Monroeville Ford franchise. To award 22 Ford recovery of anticipated profits from the Oldsmobile franchise without any deduction for the asset sale or for the fact that it benefited by having the retained cash and assets available for the operation of the new Ford franchise is to permit a double recovery. *Cf. Gustafson v. General Motors Acceptance Corp.,* 470 F.2d 1057, 1061 (8th Cir. 1973). The award of damages in favor of plaintiffs for defendant's violation of the Dealers' Act will, therefore, be vacated and the case remanded for a redetermination of such damages in light of this opinion."

In its conclusion the Circuit directed and the district court, pursuant to the Circuit's mandate, ordered: "A new trial on the issue of damages on the cause of action for violation of the Automobile Dealers' Act." 497 F.2d at 593.

We have heard extensive evidence on the question of these damages giving due consideration to the amount realized by sale of the Oldsmobile franchise and the effect of the retention of this cash and certain other assets of Rea Oldsmobile, Inc. and the application thereof to the operation of the Ford franchise. Plaintiffs' evidence at the second trial discloses damages substantially in excess of $350,000. The defendant, on the other hand, contends that $350,000 is the upper limit of the damages to be allowable, being the amount fixed by the verdict in the first trial. From this, deductions for various items, particularly the application of the sales price and remaining assets of Rea Olds to the Ford franchise, should be made.

█ The court considers the plaintiffs' position on this to be correct, and we are not limited to an award of damages not exceeding $350,000 less certain deductions.

The general rule is that where a new trial has been ordered "the issues stand as though they had never been tried, the cause is to be tried de novo, and the whole case, including the issues of fact at the former trial, is open for hearing and determination". See 66 Corpus Juris Secundum New Trial § 230, page 582. It is further stated "on a new trial for damages only, plaintiff is not restricted to recover solely for injuries apparent at the former trial."

In *Kimble v. Degenring,* 116 N.J.Law 602, 186 A. 451 (1936), the New Jersey Supreme Court held:

"A new trial for damages only is, as to that issue, a trial de novo. 'Where a motion for a new trial has been sustained, the case stands as if there had never been a trial; the court has the same power with reference to matters connected with the trial of the case as it had before the first trial was had, and it is the duty of the court to proceed as in the first instance. The new trial is had as if there had never been a previous one.' 46 C.J. 461. See, also, 20 R.C.L. 323. Thus in the case at bar it was the duty of the trial court and jury to consider the matter of damages as though it were never before raised."

The court further said:

"It would indeed be shocking to one's sense of justice if, for example, plaintiff suffered an injury to a limb and the jury was obliged to estimate the ultimate result of that injury, and a new trial was subsequently granted, that he would not be permitted to have the jury take into account, in assessing damages, the fact that the limb had to be amputated as a result of the alleged injury." 186 A. at 452.

To the same effect is *Chappell v. Pennsylvania & West Virginia Railway Company,* 402 Pa. 646, 168 A.2d 330 (1961).

**(B)** *To What Date Should Damages Be Calculated?*

Plaintiffs' evidence presented at the second trial calculated the damages from September 1, 1964, the sale of the Oldsmobile franchise, to December 1974, a date just prior to the commencement of the retrial on the issue of damages. Defendant, on the other hand, contends that plaintiff should not have been allowed to prove damages extending beyond the date of beginning of the first trial, viz.: April 17, 1972. Objections to the introduction of evidence showing damages up to the date of the second trial were overruled. The court received this evidence and now again rules in plaintiffs' favor on this issue.

*Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), would allow recovery of all damages to the date of trial, as well as such damages as might arise in the future provided that they are not so speculative as to be unprovable.

> "On the other hand, it is hornbook law, in antitrust actions as in others, that even if injury and a cause of action have accrued as of a certain date, future damages that might arise from the conduct sued on are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable. [Citations omitted.]
>
> \* \* \* \* \* \*
>
> "In antitrust and treble-damage actions, refusal to award future profits as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered." 401 U.S. at 339, 91 S.Ct. at 806, 28 L.Ed.2d at 92.

■ In other words, in antitrust cases the reason for limiting damages to the date of trial is that the future is too speculative, but when we have a retrial like this, we know what has happened in the past up to the date in the second trial and the objection of speculativeness no longer applies. Assuming that the Automobile Dealers' Act is a supplement to the antitrust laws, see 15 U.S.C. § 1224 and *Buono Sales, Inc. v. Chrysler Motors Corp.,* 499 F.2d 715 (3d Cir. 1971), the same rationale should apply to an action by an automobile dealer who has been wronged by a violation of the Automobile Dealers' Act as to other sections of the antitrust laws, i. e., damages recoverable should be limited to the date of the trial, whether first or second, and not allowed for any date beyond that as too speculative. Thus we find no merit in defendant's argument that damages must be limited to the date of the first trial. Plaintiff is entitled to recover any provable damages, present or future. The plaintiffs have in fact, made their calculation to show damages until December 1974, a date just prior to trial, by projecting lost profits from September 1964 until that date. We find no error in that method of calculation insofar as the period used is concerned.

**(C)** *To Whom Are Damages Payable?*

The next question to be determined before damages can be computed is which of the plaintiffs, Edward C. Rea or 22 Ford, Inc., is entitled to recover the damages. The outcome of this issue will solve certain subsidiary questions as whether the damages should be computed before or after corporate income taxes and whether Rea's salary should be deducted as a business expense prior to the computation of profits.

The parties have stipulated that plaintiff, Edward C. Rea (Rea), was the sole owner of all outstanding shares of stock of Rea Oldsmobile, Inc. (Rea Olds) on August 31, 1964, and that Albert D. Rea, plaintiff's brother, owned no shares of Rea Olds prior to that date. Rea Olds changed its name to 22 Ford, Inc. on September 6, 1964. Albert D. Rea first obtained stock of 22 Ford, Inc., formerly known as Edward C. Rea, Inc., on April 1, 1965. Presently, it is further stipulated, Albert D. Rea owns 79 shares, or 13 per cent, of 22 Ford, Inc. and Edward C. Rea owns the remaining 527 outstanding shares.

We held previously that this cause of action was transferred from Edward C.

Rea, Inc. to 22 Ford in the dealership agreement of April, 1966. *Rea v. Ford Motor Co.,* 355 F.Supp. 842, at 862–3. Edward C. Rea, Inc. was wholly owned by Edward C. Rea and said corporation was dissolved in March, 1965, and all of its assets transferred to 22 Ford, Inc. (See N.T. 6–7.) As to whether or not a cause of action existed under the Automobile Dealers' Act where the injury complained of was not directly to 22 Ford but to Rea and through him to Rea Olds in causing him to surrender the Oldsmobile franchise, the Third Circuit said the following:

" . . . Nevertheless, we find Ford's argument on this point does not justify its contention that it is entitled to judgment on this claim, for it is based on too narrow and technical an interpretation of who the 'dealer' is under the facts of this case. Edward C. Rea was not only a signing party to the franchise agreement between Ford and Edward C. Rea, Inc., but was made essential to the operation of the dealership by its terms, which recited that Ford had entered into the agreement 'in reliance (i) upon the representation and agreement that . . . [Edward C. Rea] substantially participate(s) in the ownership of the Dealer . . . and (ii) upon the representation and agreement that . . . [Edward C. Rea] shall have full managerial authority for the operating management of the Dealer in the performance of this agreement.' Rea, therefore, had a cause of action under the Automobile Dealers' Act against Ford for any bad faith in coercing him, as President and principal stockholder of Rea Olds, to surrender the Oldsmobile franchise and to recover damages suffered by Rea Olds as a result of such surrender. See *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 790–791 (5th Cir. 1971); *Kavanaugh v. Ford Motor Co.,* 353 F.2d 710 (7th Cir. 1965)." 497 F.2d at 584.

In a footnote at the end of that passage, the Third Circuit states:

"We note that Albert D. Rea, the minority stockholder in Edward C. Rea, Inc., although also made essential to the operation of that dealership by the terms of the franchise agreement, is not named as a party to this case. The district court on remand should determine whether Albert D. Rea should be joined as a party under F.R. Civ.P. 19–21 and whether the damages to which Edward C. Rea is entitled by virtue of his percentage of stock ownership should be diminished. See *Coman v. Coman,* 492 F.2d 273 (3d Cir. 1974)." 497 F.2d at 584

■ The clear implication of the Circuit's language is that any right of recovery in this action lies with Edward C. Rea, who as president and principal shareholder was made essential to the operation of the Ford franchise, and who was wronged by Ford's action in forcing him to surrender the Oldsmobile franchise.[1] Rea Olds does not, and never did, have a right to recover. The Third Circuit would also have allowed Albert D. Rea to recover his damages, if joinder were proper, as he too was made essential to the operation of the franchise by the franchise agreement. Albert D. Rea did not seek joinder as a party, however, and as we have noted, the parties have stipulated that Albert D. Rea owned no stock in Rea Olds. Albert Rea has also disclaimed any interest in the damages. Any judgment recoverable in this action will therefore be payable to Edward C. Rea.

*Vincel v. White Motor Co.,* 521 F.2d 1113 (2d Cir. 1975), which held that the

---

1. Although Ford asserts that it was not their policy to require dealers to disavow themselves of all other competing franchises, Ford is bound by the jury's determination of liability. The jury found, in answer to Special Interrogatory No. 5, that the defendant Ford breached "its duty to act in good faith in complying with any of the terms of the franchise or sales agreement between 22 Ford, Inc. and Ford Motor Company as required by the Automobile Dealers' Act". Implicit in this finding is the determination that one of Ford's agents required Rea to dispose of his Oldsmobile franchise.

cause of action under the Automobile Dealers' Act belonged to the corporation and not to the owner of 100% of the stock, is not controlling. The generally established principle appears to be that when a business is incorporated and suffers injury from an antitrust violation, the locus of the right of action is in the corporation, not the owners or officers of the corporation. An exception to that principle, however, was made in *Kavanaugh v. Ford Motor Co.,* 353 F.2d 710 (7th Cir. 1965), where the defendant Ford Motor Company owned all of the voting stock of the franchise and controlled the board of directors. To deny Kavanaugh the right to sue would have negated the protective purposes of the Act, as Ford Motor Company obviously would not have been interested in suing itself. Also, in *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786 (5th Cir. 1971), the shareholders were permitted to intervene where they had been made essential to the operation of the dealership under the franchise agreement. The case at bar appears to create a unique factual situation in that the violation of the Dealers' Act occurred, not by wrongful termination of the dealer's franchise agreement with the manufacturer, but by requiring the dealer to surrender a separate franchise from a competitor. Edward C. Rea, Inc. is not entitled to damages because it never held the Oldsmobile franchise. In any event, we are bound by the Third Circuit's decision in this matter which has established the law of the case. *Banco Nacional de Cuba v. Farr,* 383 F.2d 166 (2d Cir. 1967).

■ Having determined that the judgment in this case should be in favor of Edward C. Rea personally, we need not, of course, be concerned with whether or not it will be subject to Federal Income Tax nor with the amount of tax. However, the measure of damages, as always, is that amount which would put the plaintiff in the same position as if no wrong had occurred. This would be measured here as the amount Rea would have received as salary plus the amount of profits of his business Rea Olds. Ultimately, the profits would belong to Rea, whether he received them as dividends or through dissolution or liquidation of the business. However, these business profits not paid to him in the form of salary would of necessity be subject to corporate income taxes. These taxes, like any other expense, must be deducted in any allowance of damages to Rea.

We note also the recent Third Circuit case of *Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338 (1975). The court held that in computing damages using projected figures, the salary of the principal shareholder, which is properly deductible as a business expense, should be figured into the calculations, thus reducing corporate net earnings. Our holding in the present matter in no way conflicts with *Coleman.* That case involved a cause of action by the corporation, who as we discussed above, is the usual party to have standing to bring the action. In the case at bar, the cause of action is Edward C. Rea's, and damages will be computed to award him reasonable compensation in the form of salary plus lost corporate profits, after the deduction of taxes and other business expenses including his salary.

### (D) *Calculation of Damages.*

■ The defendant Ford Motor Company has sought during this trial to introduce further evidence that Rea Olds' liquidation was necessary in order to supply capital for the operation of the Ford dealership. The court has sustained objections to this evidence on the grounds that the order of the Circuit is clear that all we are to try again is the question of damages and that the question of liability has been settled by the verdict of the jury and the decision of the Circuit upholding it.[2] Whether this evidence comes in under the label of

---

**2.** The Circuit said: " . . . we have concluded that defendant is not entitled to either the entry of judgment in its favor or a new trial to determine the question of liability on this claim."

"proximate cause of damages" or under an attempt to retry liability, it is the holding of the court that it is inadmissible. If certain of the defendant's arguments were followed, the amount of recovery would be zero or less. This cannot be permitted in view of the jury's finding that Ford did not exercise good faith in pressuring Rea to surrender the Oldsmobile franchise. The Circuit has directed a retrial because the jury's award "failed to reflect the fact that in 1964 Rea Olds sold certain of its assets for $60,000. and that this cash and the remaining assets of the company [it has now been agreed that the total of these items is $160,934] were thereafter devoted to the operation of the Monroeville Ford franchise". The Circuit pointed out that the jury's award in the original trial was based upon a straight line projection of Rea Olds' estimated profits from September 1964 to the date of trial, May 1972. We have previously held in this opinion that the time for recovery of lost profits, as a measure of damages sustained by the forced sale of the Oldsmobile franchise, should be extended to the end of 1974, immediately before retrial.

■ It should be further observed that in a case such as this the jury (and the court as the trier of facts) is permitted to make a just and reasonable estimate based on all the reasonable data available. *Bigelow v. RKO Pictures, Inc.*, 327 U.S. 251 at 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946). Damages are not to be refused because of uncertainty as to their amount where the uncertainty was caused by the wrongful act of the defendant, in this case forcing Rea to get rid of his Oldsmobile franchise. The court is allowed great leeway in assessing damages in such case. One guideline is what a typical juror would award. *Salomon v. Crown Life Ins. Co.*, 399

F.Supp. 93 (E.D.Mo.1975); *Dean Foods Co. v. Albrecht Dairy Co.*, 396 F.2d 652 (8th Cir. 1968).

■ The court has further considered the ruling of our Circuit in *Hoffman v. Sterling Drug, Inc.*, 485 F.2d 132 (3d Cir. 1973), that an inflationary factor is not to be allowed as to *future* loss of earnings. In this case there is no attempt to obtain damages following the date of trial. We are dealing only with the past and we know how things have gone in the automobile industry during this period of time. Until the end of 1973, profits and salaries have increased but so also have the expenses of operating a dealership. We therefore hold that allowance for inflationary factors should be considered, but these factors are taken into consideration in allowing Rea Olds its historical percentage of sales for the various years and the profitability of such sales figured on the basis of the Private Transportation Index. To allow anything more would be to assume too much that is speculative and for which there is no basis on the record. In calculating the productive return on the $160,934 which came into 22 Ford as a result of the sale of Rea Olds, we find that a reasonable return—or the expense which would have been incurred by Rea in order to obtain this amount of capital during this period of time—was the prime rate of interest plus ¾ per cent for an amount, as determined by plaintiff's expert Staelin, of $177,940 the benefit received by 22 Ford in retaining cash and assets available for the operation of the new Ford franchise plus the original $160,934 or a total of $338,874.[3]

In calculating total profits which would have been realized by Rea Olds, we have made no allowance for the possibility of termination of the franchise by Oldsmobile since the evidence is, and

---

**3.** "However, the jury's award here failed to reflect the fact that in 1964 Rea Olds sold certain of its assets for $60,000. and that this cash and the remaining assets of the company were thereafter devoted to the operation of the Monroeville Ford franchise. To award 22 Ford recovery of anticipated profits from the Olds-

mobile franchise without any deduction for the asset sale or for the fact that it benefited by having the retained cash and assets available for the operation of the new Ford franchise is to permit a double recovery." 497 F.2d 577 at 587.

we so find, that Oldsmobile franchises are usually renewed with a good dealer. All the evidence indicates that Edward C. Rea was highly regarded as a good dealer, and the testimony is, according to Carey of the Pittsburgh National Bank, that he was regarded as a good credit risk.

In calculating the total sales there is some discrepancy. Staelin has a figure of .00943% of national Oldsmobile sales whereas Geisel says the figure is .00809%. We accept Geisel's figures rather than Staelin's finding them to be more correct, based upon a three-year period.

The court further holds that no interest should be allowed. This is an unliquidated claim with the amount not capable of ascertainment by mathematical calculation alone at any period of time. The court agrees with the defendant's expert witnesses Gallagher and Geisel that to allow interest would lead to double recovery.

Allowance of all of plaintiffs' claimed items would introduce internal inconsistencies as to the proper theory of recovery. To paraphrase an old proverb, it would allow Rea to have his profits and spend them too. While the inflation factor might account for the actual increase in the cost of goods sold, and so forth, allowing interest on these lost profits would assume, in effect, that the dealership would have had the earnings and invested them, or at least used them to reduce interest costs (on buildings, inventory and so forth). Nevertheless, the mere assumption that Rea Olds would have always sold its historical percentage of national Oldsmobile sales allows for internal growth and expansion.

In other words, the statistical data of plaintiffs assumes a continually increasing number of new car sales until 1974 but does not assume increases in capital, personnel, advertising, and so forth, except insofar as this is accounted for in the profitability formula as expounded by defendant. Defendant's Exhibit 17. Yet, though the plaintiff assumes ever-increasing sales and profits, he does not assume, apparently, that the profits would be reinvested in the business to provide the capital for handling the expanded business. For this reason, plaintiffs' projections, which include both inflation and interest, overstate damages.

It would seem that a simple measure of damages would be the fair market value of what the Rea Olds franchise was worth on September 16, 1964, versus what Rea received for it by way of cash and the assets he retained. The court notes that unlike many Automobile Dealers' Act cases in which plaintiff loses money for several years (or in which profits are at a minimal level) and other cases in which the plaintiff goes bankrupt and loses his capital investment, in the present case, the plaintiff sold his Oldsmobile business and received money for it. If this were not a forced sale, we would assume that the plaintiff received the fair market value for his business and thus incurred no loss. Considering the pressures on Rea to sell, it would appear that the sale could have been at a loss and Rea should be entitled to recover that loss. Neither party, however, offered evidence to show the damages in this manner. Instead, plaintiff has elected to claim only loss of anticipated profits. See *Gustafson v. G. M. A. C.*, 470 F.2d 1057 (8th Cir. 1973) cited by the Third Circuit herein.

We allow no further inflationary factors on Rea's salary and bonus since this is allowed in the profit figures to which the Private Transportation Index has been applied to determine profits before taxes. We find this to be sufficient allowance for inflationary factors in this most difficult calculation. The court determines that in a case such as this the Private Transportation Index is more applicable since the consumer Price Index is more concerned with consumable purchases.

Our calculation (see Appendix A) therefore proceeds to take the car sales for each year as calculated in Defendant's Exhibit 16 giving an estimated profit as shown in Defendant's Exhibit

18 before salary and bonus. Salary at $18,000 per annum and bonus at 25 per cent are then deducted giving estimated profit before taxes as shown in Defendant's Exhibit 18 and 19. This is then increased by multiplying it by the Private Transportation Price Index based on 1964 = 100 resulting in Current Dollar Pre Tax Profits.

■ Pennsylvania Tax and United States Income Tax are then calculated and deducted as shown in Defendant's Exhibit 20 resulting in the figures for

after Tax Profits for each year, a total of $207,663. To this is added the total of salary and bonuses, $267,866 giving a grand total of $475,509 gross losses. From this deduction is made of $338,874, the amount of benefit received from sale of Rea Olds including rate of return calculated as set forth above. This gives us net damages of $136,635 for which a judgment will be entered.

The foregoing memorandum opinion contains the court's findings of fact and conclusions of law in accordance with Rule 52(a).

APPENDIX A

| | CAR SALES (DX 16)[1] | PROFITS BEFORE TAXES AND OWNER'S SALARY AND BONUS (DX 18) | EDWARD C. REA'S SALARY AND BONUS[2] | | CORPORATE PROFITS AFTER BONUSES & SALARY AND BEFORE TAXES (DX 19–Col. 4) | AFTER TAX PROFITS (DX 20–Col. 5) |
|---|---|---|---|---|---|---|
| 1964[3] | — | — | — | | — | — |
| 1965 | 493 | $52,784 | 18,000 + 25% = | $26,696 | $26,529 | $ 19,451 |
| 1966 | 470 | 52,096 | 18,000 + 25% = | 26,524 | 26,329 | 19,304 |
| 1967 | 446 | 51,377 | 18,000 + 25% = | 26,344 | 26,435 | 19,176 |
| 1968 | 505 | 53,144 | 18,000 + 25% = | 26,786 | 28,667 | 19,734 |
| 1969 | 520 | 53,593 | 18,000 + 25% = | 26,898 | 30,021 | 19,619 |
| 1970 | 374 | 49,222 | 18,000 + 25% = | 26,076 | 27,472 | 18,724 |
| 1971 | 540 | 54,192 | 18,000 + 25% = | 27,048 | 33,422 | 21,794 |
| 1972 | 590 | 55,689 | 18,000 + 25% = | 27,423 | 35,072 | 22,640 |
| 1973 | 654 | 57,605 | 18,000 + 25% = | 27,901 | 38,110 | 24,137 |
| 1974 | 420 | 50,599 | 18,000 + 25% = | 26,150 | 35,241 | 23,084 |
| | | | | $267,846 | | $207,663 |

[1] .0809% of national sales.

[2] Salary $18,000
Bonuses 25% of Pre Tax Profits after deduction of salary.

[3] 1964 is disregarded because of small amounts involved and disputes over certain deductions and allocations.

| | |
|---|---|
| Salary and bonuses | + 267,846 |
| Gross Damages | $475,509 |
| Deduct benefit of $160,934 invested in business (see p. 14 of memorandum) | −338,874 |
| Net damages | $136,635 |

JUDGMENT ORDER

And now, to wit, December 18, 1975, after hearing the evidence in this case and considering the arguments and briefs of the parties in accordance with the memorandum opinion filed this date and the calculations therein contained,

It is ordered that judgment be entered in favor of the plaintiff Edward C. Rea and against the defendant Ford Motor Company in the amount of $136,635 representing damages due him under the

Automobile Dealers' Day in Court Act (15 U.S.C. § 1221 et seq.).

It is further ordered that with respect to the claims of 22 Ford, Inc., judgment be and hereby is entered in favor of the defendant Ford Motor Company.

It is further ordered that since all other claims in this case have been disposed of or withdrawn by the plaintiff that the Clerk of Court enter final judgment in favor of the plaintiff Edward C. Rea and

against the defendant Ford Motor Company in the amount of $136,635.