**Edward C. REA and 22 Ford Inc., a corporation, Appellants and Cross-Appellees,**

**v.**

**FORD MOTOR COMPANY, a corporation, Appellee and Cross-Appellant.**

**Nos. 76–1982 and 76–1983.**

United States Court of Appeals, Third Circuit.

Argued May 6, 1977.

Decided July 6, 1977.

Certiorari Denied Oct. 31, 1977. See 98 S.Ct. 401.

**556**

Thomas M. Kerr, Paul H. Titus, Kaufman & Harris, Robert A. Jarvis, Beck, McGinnis & Jarvis, Pittsburgh, Pa., for Edward C. Rea and 22 Ford, Inc.

Frank L. Seamans, John H. Morgan, Richard W. Gladstone, II, Robert L. Allman, II, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Ford Motor Co.

Before SEITZ, Chief Judge, and GIBBONS and HUNTER, Circuit Judges.

JAMES HUNTER, III, Circuit Judge:

Appellant and cross-appellant between them raise ten issues relating to the measure of damages in a judgment won by Edward C. Rea against Ford Motor Company under the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–25. After a thorough review of the record, we find merit in only one: the district court erred in deducting from gross damages $160,934.00, an amount that was already part of the assets of Rea's Oldsmobile dealership before Ford's violation of the Act. Hence, we vacate and remand with directions to add that amount to the judgment.

**I.**

This litigation is more than ten years old. Its tortuous history was set forth in an earlier opinion of the court, *Rea v. Ford Motor Co.*, 497 F.2d 577 (3d Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974). We will briefly summarize the underlying facts.

In February of 1964, Rea was given a franchise for a Ford dealership in Monroeville, Pennsylvania. At that time, he was already principal stockholder of an Oldsmobile dealership in Wilkinsburg, Pennsylvania. Rea told Ford that he would acquire assets to operate the Ford dealership by liquidating the Oldsmobile business, and Ford had him sign a letter committing him to take that step.

Subsequently, Rea suggested to a Ford representative that the Oldsmobile operation might not be closed after all. The Ford representative warned Rea that he might halt the shipment of Ford cars to Rea unless he got out of the Oldsmobile business, explaining that Ford believed those assets necessary to the successful operation of the Ford franchise. Shortly thereafter, Rea resigned the Oldsmobile franchise, kept part of its assets, and sold the rest. The retained assets were used in operating the Ford franchise in Monroeville.

In March, 1967, Rea filed a complaint against Ford in the Western District of Pennsylvania. It alleged breach of contract, violations of the Sherman Act, 15 U.S.C. §§ 1 and 2, and violations of the Automobile Dealers' Day in Court Act. A jury found Ford liable under all of these theories; Ford was ordered to pay some $3,379,683 in damages. On appeal, this Court reversed and remanded. The finding of liability on the contract claim and on some of the Sherman Act claims were reversed. The rest of the Sherman Act claims were sent back for retrial because of a confusion of proofs with the other claims. Liability under the Auto Dealers' Act was upheld, but the case was remanded for a redetermination of damages. On remand, Rea withdrew the antitrust claims, leaving only the question of damages under the Auto Dealers' Act. The district court awarded Rea $136,635.00. Rea appealed from the court's order denying his motion to amend the judgment to include other elements of alleged damage, and Ford cross-appeals.

## II.

■ At the outset, Ford argues that the trial court erred in refusing to allow Ford to introduce evidence tending to establish that: (1) Ford's acts were not the proximate cause of the sale of Rea's Oldsmobile business; (2) Ford's acts were not the proximate cause of any loss in profits by Rea's corporate entities;[1] and (3) Rea failed to "mitigate" damages and, therefore, Ford had not caused any real harm. These elements of causation, says Ford, go to damages alone and were not foreclosed by this court's affirmance of the finding of liability under the Automobile Dealers' Day in Court Act.

■ We do not agree. Causation is an element of liability. Our remand left open only the amount of damages, not the fact of damage. Cf. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1320–21 (5th Cir. 1976) (must be some evidence showing casual link, in order to establish liability in antitrust case, before reaching question of amount of damages); Restatement (Second) of Torts § 430 (1965) (liability for negligence requires finding of causation).

## III.

■ Ford also claims that the court below erred in including Rea's projected salary and bonuses at the last Oldsmobile franchise in the damage calculation. Instead, argues Ford, damages ought to be figured to the corporate entity, with Rea being compensated as that entity's principal stockholder.

Again, we do not agree. The corporate entity that suffered harm was the Oldsmobile franchise, which ceased to exist; the "dealer" for purposes of the action under the Auto Dealers' Act[2] was Edward Rea in his capacity as a *Ford* dealer. *Rea, supra* at 584. In that capacity, he personally suffered damage not only through loss of income as a shareholder of the Oldsmobile business Ford forced him to close, but also through loss of the salary and bonuses he could have earned in that business. Since Rea was injured in both respects by Ford's action, he can be made whole only by recovering both types of compensation.

## IV.

Ford's last point of appeal is that the trial court erred in awarding Rea damages covering the period between Ford's successful first appeal and the retrial as to damages. Ford claims to have been "penalized" for taking an appeal.

■ We do not agree. The court merely exercised its ordinary powers. Lost profits are recoverable in an action for the destruction or interruption of an established business, whenever they are not merely speculative or conjectural. *Roseland v. Phister Mfg. Co.*, 125 F.2d 417, 420 (7th Cir. 1942). And, in general, a court has the power to award damages occurring up to the date of the ultimate judgment in the case. *Calhoun v. United States*, 354 F.2d 337, 339, 173 Ct.Cl. 893 (1965). Ford does not claim that the damages were too speculative; indeed the fact that the injured party—Rea—had survived the intervening period meant precisely that any objection that he might not have lived to suffer "future damages"—those occurring after the first trial—was obviated. As for the supposed "penalty," Ford might likewise claim that it was "penalized" by defending the action at all, since that also prolonged the period for which lost profits might have been recovered.

1. The dissent suggests that there was no finding "that Rea had unlimited capacity . . . to perform as manager of both dealerships" simultaneously. We do not agree. Our affirmance of liability below was premised on such a finding. Otherwise, there could have been no liability.

2. 15 U.S.C. § 1221(c) provides as follows:
The term "automobile dealer" shall mean any person, partnership, corporation, association, or other form of business enterprise . . . operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons.

## V.

Rea argues that the injured party is the corporation in which the Ford franchise is lodged. Therefore, he says, damages should have been awarded to the corporation.

■ We noted above, however, that our first decision in this case attributed the cause of action to Rea himself. *Rea, supra* at 584. Besides, the corporation holding the Ford franchise never owned any part of the Oldsmobile business, so it could not have been injured by the loss of the Oldsmobile dealership. Hence, the damages were properly computed with respect to Rea personally.

## VI.

■ Rea also argues that the trial court erred in deducting from the damages suffered by the Oldsmobile dealership corporation—which were awarded to Rea as former principal shareholder—an amount representing federal and state corporate taxes.

If Rea had prevailed in arguing that the Ford dealership was—as some kind of alter ego of the Oldsmobile dealership corporation—the injured party, then this argument would require our close attention. We have already held, however that Rea—not the Ford dealership—was the party injured by the closing of the Oldsmobile operation. Thus, corporate taxes were properly deducted from any amounts awarded to him as compensation for lost corporate profits.

## VII.

■ Rea contends that the amounts awarded to him representing lost salary and bonus at the Oldsmobile dealership were too low. He compares the amounts to those he actually earned at the Ford dealership, which were substantially higher.

The Ford dealership, however, was twice as large and produced correspondingly greater profits, on which bonuses are figured. After thoroughly reviewing the record, we are unable to say that the trial court's figures were clearly erroneous.

## VIII.

Rea insists that the trial court should have awarded him pre-judgment interest. Again, we do not agree.

■ In general, pre-judgment interest is not awarded on unliquidated claims, such as the one before us. *Miller v. Robertson*, 266 U.S. 243, 258, 45 S.Ct. 73, 69 L.Ed. 265 (1924). It may be awarded in the sound discretion of the trial judge when necessary to arrive at fair compensation. *Id.* The trial court in this case ruled that allowance of interest would create the possibility of double recovery, since some allowance for growth had been made in figuring the sales base on which profits had been figured. We cannot deem this an abuse of discretion.

## IX.

■ Rea's last contention is that the court should not have deducted from the award $160,934.00, the value of the assets transferred from the liquidated Oldsmobile operation to the new Ford Dealership. We agree that this deduction was error.

In our previous opinion in this case, we mentioned the $160,934.00 as one of the items for which some adjustment ought to be made in the redetermination of damages:

> However, the jury's award here failed to reflect the fact that in 1964 Rea Olds sold certain of its assets for $60,000. and that this cash and the remaining assets of the company were thereafter devoted to the operation of the Monroeville Ford franchise. To award 22 Ford recovery of anticipated profits from the Oldsmobile franchise without any deduction for the asset sale or for the fact that it benefited by having the retained cash and assets available for the operation of the new Ford franchise is to permit a double recovery. *Cf. Gustafson v. General Motors Acceptance Corp.,* 470 F.2d 1057, 1061 (8th Cir. 1973). The award of damages in favor of plaintiffs for defendant's violation of the Dealers' Act will, therefore, be vacated and the case remanded for a re-

determination of such damages in light of this opinion.

*Rea, supra* at 587 (footnote omitted).

The trial court determined the interest on this amount—$177,940.00. It then deducted $338,874.00, the total of the value of the transferred assets ($160,934.00) plus the interest these assets would have earned ($177,940.00), in order to reflect the benefit of "having the retained cash and assets available for the operation of the new Ford franchise." *See* App. at 862a.

Deduction of the interest those assets could have earned was proper. The court recognized our concern that Rea was not harmed to the extent that the freeing of his assets in the Oldsmobile business merely allowed him to earn money elsewhere on those same assets. The asset value itself, though, was an amount that Rea's Oldsmobile operation had already earned. It should not have been deducted from the future profits. It cannot be likened to a loan, which would have to be paid back, from the Oldsmobile dealership to Rea and then to the Ford franchise; instead, it was money that Rea, as a risker of capital, took out of the Oldsmobile venture and put into the Ford operation.

Therefore, we will vacate the judgment of the district court and remand with instructions to add $160,934.00 to the judgment.

GIBBONS, Circuit Judge, dissenting.

I

I would reverse the judgment of the district court and direct the entry of judgment for the defendant. I think the prior decision of this court, *Rea v. Ford Motor Co.,* 497 F.2d 577 (3d Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974), was incorrectly decided, and that judgment should have been entered in defendant's favor on plaintiff's Dealers' Day in Court Act claim. Neither Rea Oldsmobile, Inc., nor Edward C. Rea, in my view, had causes of action under that statute. Edward C. Rea, Inc., the only entity protected by the statute at the time of the termination of the Oldsmobile franchise, was not injured.

The prior opinion misconstrues an important federal regulatory statute. Only an "automobile dealer" has a cause of action under the Act. 15 U.S.C. § 1222. The prior opinion treats Edward C. Rea, an officer and employee of a dealer, as if he were an "automobile dealer." That, however, is a defined term:

The term "automobile dealer" shall mean any person, partnership, corporation, association, or other form of business enterprise . . . operating under the terms of a franchise and engaged in the distribution of passenger cars, trucks or station wagons. 15 U.S.C. § 1221(c).

An officer or employee of a dealer does not fit within that definition. Moreover the dealers' § 1222 cause of action is for "damages by him sustained . . . by reason of the failure of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or conditions of the franchise, or in terminating, cancelling or not renewing the franchise with said dealer." 15 U.S.C. § 1222. I do not believe these words can be fairly construed to afford to an officer or employee of the automobile dealer a cause of action for the cancellation of an entirely different franchise held by a separate corporation from a different manufacturer.

The prior opinion justifies that result by reference to the provision in the Edward C. Rea, Inc., contract, in which that corporation represented to Ford Motor Co. that Edward C. Rea would be in charge of its management. I would not hold, as the majority has done, that the dealer's representations as to its overall management, or the management of any of its departments, can be relied upon to confer on the managers a statutory cause of action belonging solely to the automobile dealer. As the Second Circuit said in *Vincel v. White Motor Corp.,* 521 F.2d 1113, 1120 (2d Cir. 1975):

[w]hen, as here, a dealership is doing business in corporate form, the statute contains no hint that it intends a departure from the established principle that

the locus of the right of action is the corporation.

The prior panel opinion is, of course, law of the case and binding on this panel unless the court en banc reconsiders it. I would do so, and reverse.

## II

Many of the difficulties with respect to measure of damages arise out of an attempt to award damages under the Dealers' Day in Court Act to a party not within the scope of the Act. Thus, no effort to straighten out this rather hopeless muddle is likely to be satisfactory. But even accepting the notion that plaintiff has a cause of action, I respectfully dissent from this court's recalculation of damages. We now increase a judgment of $136,635.00 to $297,069.00. In part this is accomplished by awarding to Edward C. Rea the salary and bonuses he would have earned in the terminated Oldsmobile franchise. Entirely aside from the fact that the Dealers' Day in Court Act makes no provision for compensation to officers and employees of terminated dealerships, and aside from the further fact, alluded to in Point I above, that the cause of action against Ford, if there was any, belonged to Edward C. Rea, Inc., that computation results in Rea being compensated both for the salary he "lost" when Rea Olds surrendered its Oldsmobile franchise, and for the salary and bonus he was paid by the very same corporation when it changed its name to Edward C. Rea, Inc. He was, after all, functioning in virtually the same capacity before and after, except that the corporation was now selling Fords instead of Oldsmobiles. The record does not support a finding, nor did the district court find, that Rea had unlimited capacity, mental and physical, to perform as manager of both dealerships. If we are measuring injury to the corporation which held the Oldsmobile franchise, we must deduct, in calculating lost profits, from its projected gross income the anticipated cost of management, since it could not operate without incurring such cost. *Pitchford v. Pepi, Inc.*, 531 F.2d 92, 108 (3d Cir.) (Adams, J.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976). But that does not mean that its manager, who takes an identical job in another franchise, should be paid twice because he happens also to be a stockholder. Certainly Ford is right that the salary and bonus projections should not have been included in the damage calculation, just as Rea is wrong in contending that taxes should have been excluded from that calculation.

Point II of the majority opinion rejects Ford's contention that the court erred in excluding evidence that Rea Olds, Inc., which changed its name to Edward C. Rea, Inc., was insufficiently capitalized to carry on two automobile dealerships at the same time. The majority opinion reasons:

> Causation is an element of liability. Our remand left open only the amount of damages, not the fact of damage.

This does not do justice to Ford's argument. Ford urges that assuming the termination was, as the first jury verdict held, attributable to Ford, the fact remains that the very same corporation immediately put all its assets in a new automobile dealership, where those assets were utilized to the maximum. Ford offered testimony to prove that no new capital was available to that corporation, and that since it could, and did, operate a profitable business with its old capital it suffered no injury in fact, even if Ford did cause termination of the Oldsmobile franchise. Point II of the majority opinion is no answer to this argument. The court did err in excluding the proffered evidence. At the very least a new trial is required.

As to the remaining damage contentions, on the premise on which the majority proceeds I cannot disagree with its treatment of them. But the entire calculation is based on the fundamentally false premise that the Dealers' Day in Court Act gives to an employee of an automobile dealership a cause of action for injury to his interest in a different dealership holding a franchise from a different manufacturer. I would reverse. At a minimum there should be another trial on damages.