.McLEAN, Appellant, v. MERRIMAN, Respondent.

175 N. W. 878.)

(File No. 4537.   Opinion filed January 5, 1920.)

1.  **Appeals—Notice Of, Served, Filed, After Year from Judgment— Period for Appeal from Order Denying New Trial Unexpired, Abortive Appeal from Judgment—Statute.**

    Where notice of appeal was served and filed more than a year after judgment entered, attempted appeal therefrom was abortive, (Laws 1917, Ch. 201, Sec. 3147 Rev. Code 1919), this even though time within which appeal from order denying · new trial could be taken had not yet expired.

2.  **Appeals—Notice More Than Sixty Days From Order Date, Within Sixty Days of Service Date, Effect**

    Where notice of appeal was served more than sixty days· after date of order denying new trial, but within sixty days of date of service of notice of order, appeal therefrom was ineffectual.

3.  **Appeals—Motion Re New Trial Submitted Within Year After Judgment, What Questions Reviewable Re Year From Judgment.**

    Where motion for new trial was submitted within a year after entry of judgment, appeal from order denying new trial presents all questions presentable on appeal from such order if taken within a year from date of judgment entered.

4.  **Appeals—Error—Directing Verdict—Several Grounds, Either, Sufficient.**

    If either of three grounds on which directed verdict was asked was sufficient, trial court's direction accordingly will be sustained.

5.  **Libel—Action For, Previous Notice, Demand, Under Statute, Question Involving Not Reviewed, When?**

    Upon appeal from a judgment for plaintiff in a libel suit, the question whether plaintiff failed to give the notice before suit, required by Laws 1915, Ch. 153, Secs. 96, 97, Rev. Code 1919, will not be reviewed, where trial court must be sustained on the meirts.

6.  **Libel—Conducting Campaign Against Woman Suffrage and Prohibition, Charging Conducting of Such Campaign, Whether Qualifiedly Privileged—Privilege, Malice as Affecting—Statute.**

    If a newspaper publication representing plaintiff as conducting an election campaign against a constitutional amendment extending elective franchise to women and involving a liquor· prohibition amendment, and which among other things charged (quoting the same from an article in another journal) that he divided his time between the mayor of a certain city "and the Mansion" her most notorious resort—was privileged, the

privilege was qualified, not absolute (construing Sec. 99, Rev. Code 1919); the difference between a qualified and absolute privilege being that malice destroys the first, but does not affect the latter.

7. **Libel—Qualifiedly Privileged Communication, Malice Re, Burden of Establishing.**

Even though the published communication be but qualifiedly privileged, the burden to establish malice necessary to destroy it is upon plaintiff.

8. **Libel—Privileged Communication, Malice Re—Going to "Notorious Resort"—Sufficiency of Evidence—Directing Verdict.**

A newspaper article representing plaintiff as conducting an election campaign against a constitutional amendment extending elective franchise to women and involving a liquor prohibition amendment, and which among other things charged (quoting the same from an article in another journal) that he divided his time between the mayor of a certain city "and the Mansion" her most notorious resort—constituted no evidence upon which a finding of malice in making the publication could have been based; hence trial court did not err in directing verdict for defendant, if the communication was privileged.

9. **Libel—Charging Spending Time at a "Notorious Resort," Whether Privileged, Whether Libelous—Privileged Communication, Statutory Definition as Declaratory Law.**

Assuming, but not deciding, that to charge one with spending his time at a "notorious resort," is libelous, was said publication privileged? And held, that the statute (Sec. 99, Rev. Code 1919) defining privileged communication as one made without malice, to a person interested therein * * to one standing in such relation to the person interested as to afford reasonable ground for supposing the motive for the communication innocent, is but a statutory declaration of commonly accepted law.

10. **Libel—Privileged Communication, Test, Re Occasion, Motive, Probable Cause, Public Interest—Test Applied to Facts Re Conducting Anti-suffrage, Anti-liquor Campaign.**

A communication, to be privileged, must be made upon a proper occasion, from a proper motive, and be based upon reasonable or probable cause; and the test in determining whether a communication published under the particular circumstances is or not privileged, is to ask whether, if true, it is matter of proper public interest in relation to that with which it is sought to associate it; and it was matter of proper interest to the electors of the state to know whether or not the campaign being conducted against a suffrage amendment was being financed or otherwise supported by the liquor interests; and if defendant believed such to be the fact, and his belief was

based in part upon an article he had read in The Woman's Journal, he had the right, if he honestly relied upon its truthfulness, to copy same for information of readers of his paper; and while it was plaintiff's misfortune that his name was mentioned in such connection· as being in charge of campaign against woman's franchise, and involving also a constitutional amendment agaist the liquor traffic, yet any person taking charge of an election campaign involving such matter of great public moment, stands much in the position of a candidate for public office, and his doings, his associates, the forces back of him, his support financial and. otherwise, in connection with the campaign, insofar as they might throw light upon the nature of the forces interested in such campaign, were matters of legitimate public interest; and such communication was privileged.

11. **Libel—Malice, No Evidence Of, Effect Re Presumption of Good Faith, Belief in Truthfulness, Public Interest, Re Directing Verdict—Statute.**

Inasmuch as Sec. 99, Rev. Code 1919, provides that "malice is not inferred from * * publication. "of such an article as one concerning plaintiff's alleged conducting of an election campaign involving anti-suffrage and anti-liquor traffic constitutional amendments, and there being no evidence to support allegation of malice, trial court, on motion for directed verdict, was bound to assume good faith of defendant—that he believed in the truth of the published article copied, and deemed it matter of proper interest to voters.

Appeal from Circuit Court, Spink County. Hon. Alva E. Taylor, Judge.

Action by Charles McLean against E. B. Merriman, to recover damages for alleged libel. From a judgment for defendant upon directed verdict, and from an order denying a new trial, defendant appeals. Affirmed.

*Roy T. Bull,* for Appellant.

*Sterling & Clark,* for Respondent.

(5) To point five of the opinion, Appellant cited: Children v. Shinn (Ia.) 150 N. W. 864.

(7) To point seven, Appellant cited: Sec. 2, Chap. 154, Laws 1903; Newell Slander & Libel, Sec. 39, page 107; 25. Cyc. 315, 263, and notes.

(8) To point eight, Appellant cited: Myers v. Longstaff, 14 S. D. 98.

(9) To point nine, Appellant cited: Rood v. Dutcher, 23 S. D. 70 (120 N. W. 772); Williams v. Black, 24 S. D. 501 (124

N. W. 728); Hamilton v. Eno, 81 N. Y. 116; Post Pub. Co. v. Hallam, 59 Fed. 530, L. R. A. 1918 E. 63.

Respondent cited: Egan v. Dotson, 36 S. D. 459.

WHITING, J. Action to recover damages because of alleged libel. A verdict was directed in favor of defendant. From the judgment entered thereon, and from an order denying a new trial, defendant attempted to appeal.

[1-3] The notice of appeal was served and filed more than a year after the entry of the judgment. The attempted appeal from the judgment was therefore abortive. Chapter 201, Laws 1917; section 3147, Rev. Code 1919. This is true even though the time within which an appeal from the order denying a new trial could be taken had not yet expired. Keyes v. Baskerville, 42 S. D. 381, 170 N. W. 143. The notice of appeal was served more than 60 days after date of the order denying a new trial, but within 60 days of the date of service of such order. The appeal from the order was effectual. Braun v. Thuet, 174 N. W. 807. The motion for new trial was submitted within a year after entry of judgment. On such appeal from the order there can be presented all questions that could have been presented upon an appeal from such order if such appeal had been taken within a year from date of entry of judgment. Keyes v. Baskerville, 175 N. W. 874.

[4] Respondent moved for a directed verdict upon three separate and distinct grounds. If either ground was sufficient, the ruling of the trial court must be sustained.

[5] Respondent contends that appellant failed to give the notice required by chapter 153, Laws 1915, sections 96 and 97, Rev. Code 1919; and further contends that such failure bars appellant's right to recover even actual damages. Inasmuch as the trial court must be sustained on the merits, we do not feel called upon to determine the correctness of these contentions.

[6-8] If the communication in question was privileged, such privilege was qualified and not absolute. It is clear that if it comes under section 99, Rev. Code 1919 (declaring what communications are privileged), it comes under subd. 3 thereof. The difference between a qualified and absolute privilege is that malice destroys the first but does not affect the latter. Andrews v. Gardiner, 224 N. Y. 440, 121 N. E. 341, 2 A. L. R.

1371. But even though the privilege be but qualified, the burden to establish the malice necessary to destroy it is upon the plaintiff. Section 99, Rev. Code 1919; Egan v. Dotson, 36 S. D. 459, 155 N. W. 783, Ann. Cas. 1917A, 296. In the case at bar there was absolutely no evidence upon which a finding of malice could have been based. It follows that the trial court did not err in directing a verdict if the communication in question was privileged.

Respondent was the publisher of a weekly newspaper published at Redfield, S. D. The communication in question was published just prior to the general election in the fall of 1916. At this election an amendment to the Constitution, the effect of which would be to extend the elective franchise to women, was to be submitted to the voters for ratification or rejection. Plaintiff, a resident of Iowa, had come into this state and taken charge of the campaign waged against the ratification of the amendment. The clear purport of the article published was to lead the readers of the paper to believe that those conducting the campaign against the amendment were aligned and associated with the "liquor interests." There was also pending for ratification or rejection at such general election an amendment providing for the prohibition of the liquor traffic. The article in question charged that the opposition to the Suffrage Amendment was financed from Massachusetts and was in secret collusion with the "wets." It detailed to some extent the work appellant had been doing. It criticized the importation of workers to aid in the fight against the Suffrage Amendment. It called attention to the alleged sources of the financial support given both for and against such amendment. It stated that appellant was "from Dubuque, which has the reputation of the 'wettest' city in Iowa." Then, apparently in further support of the claim that the fight against this amendment was being aided by the liquor interests, there was copied an article from the Woman's Journal. In this it was directly charged that the liquor interests were supporting and aiding the campaign against the Suffrage Amendment; and it was stated therein that appellant —                                         ,
"is making people believe he is not employed by the liquor people. Perhaps he is not. But the facts remain that when

he was at Deadwood a short time ago he divided his time, we are told, between the First National Bank, which is owned by Deadwood's ultra-wet mayor, and the Mansion, her most notorious resort. Here the men he consults and advises with are the men who have always been aligned with the wet forces, and his printing is coming from the same plant which does the printing for the liquor people. A man I know asked McLean what papers the antis could control and he named eight in the states, which are notoriously wet, and which are always bought by the liquor people for every purpose which they wish to exploit."

[9] The libel is alleged to be contained in the statement that appellant divided his time between the mayor "and the Mansion, her most notorious resort." For the purposes of this decision, we will assume, but do not decide, that to charge one with spending his time at a "notorious resort" is libelous. Was it privileged A communication is privileged if made without malice "to a person interested therein * * * by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent." Section 99, Rev. Code 1919. This is but a statutory declaration of the commonly accepted law. Marks v. Baker, 28 Minn. 162, 9 N. W. 678; Briggs v. Garrett, 111 Pa. 404, 2 Atl. 513, 56 Am. Rep. 274. The rule as stated in the Briggs Case is:

"A communication to be privileged must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause."

[10] An infallible test in determining whether a communication published under the particular circumstances is or is not privileged is to ask whether, if true, it is a matter of proper public interest in relation to that with which it is sought to associate it. Andrews v. Gardiner, supra. It was certainly a matter of proper interest to the electors of this state to know whether or not the campaign being conducted against the Suffrage Amendment was being financed or otherwise supported by the liquor interests. If the respondent believed such to be the fact and his belief was based, even in part, upon the article which he had read in the Woman's Journal, he had

the right, if he honestly relied upon the truth of such article, to copy the same for the information of the readers of his paper. It was appellant's misfortune that his name chanced to be mentioned in connection with this matter; but any person who takes charge of an election campaign involving a matter of great public moment as did this campaign stands much in the position of a candidate for public office. His doings, his associates, the forces back of him, his support financial and otherwise in connection with the campaign, his goings and his comings, all of these in so far as they might throw light upon the nature of the forces that were interesting themselves in such campaign were matters of legitimate public interest and concern. The communication was therefore privileged.

[11] Inasmuch as section 99, Rev. Code 1919, provides that "malice is not inferred from the * * * publication" of an article such as the one before us, and appellant having offered no evidence to support the allegation of malice, the court, on motion for directed verdict, was bound to assume the good faith of respondent—that he did believe in the truth of the article copied and deemed it a matter of proper interest to the voters.

The order appealed from is affirmed.