PARR, Respondent, v. WARREN-LAMB LBR. CO., et al, Appellants.

(236 N. W. 291.)

(File No. 6413. Opinion filed April 28, 1931.)

*Buell, Denu & Philip,* of Rapid City, for Appellants.

*F. D. Bangs* and *Turner M. Rudesill,* all of Rapid City, for Respondents.

ROBERTS, J.  This is an action for slander.  From judgment for the plaintiff and order denying motion for new trial, defendants appeal.

The plaintiff was employed by the defendant Warren-Lamb Lumber Company as a lumber piler.  The defendant James Warren, at the time the alleged slanderous words were spoken, was the secretary of the defendant corporation, which conducted a lumber business in Rapid City and employed upwards of three hundred men, and had supervision of the properties of the company and of the employment and discharge of employees.  During the noon hour of the day when the alleged slanderous words were uttered, the defendant Warren saw the plaintiff in the cab of a truck which was standing near the company's office building.  Warren testified that he saw the plaintiff reach toward the floor of the cab; observed that plaintiff stepped out of the truck cab and placed something in his left coat pocket.  Upon inquiry, Warren learned from William Bridge, an employee of the company and driver of the

truck, that a wrench and a pair of gloves were left in the cab of the truck during the forenoon, and that these articles had been removed by some one unknown to Bridge. Warren asked Bridge to go with him to see the plaintiff, and they walked over to a pile of lumber where plaintiff and one Renshaw were working, and there, in the presence and hearing of Bridge, the defendant Warren charged plaintiff with the theft of the wrench and gloves, and discharged him from the employ of the defendant corporation.

Plaintiff testified that defendant Warren said: "You stole some wrenches, didn't you?" This, in substance, is admitted by defendant Warren. Though defendant did not admit that he used the words imputed to him by the plaintiff, he did testify on cross-examination: "I did not search him. I didn't refuse to do so. I simply didn't do it. I persisted in my accusation that he had stolen the wrenches and also mentioned the gloves." The plaintiff and defendant Warren then went in search of Ralph Curtis, the superintendent under whom plaintiff was working, to have plaintiff's time made out. The conversation between Warren and Curtis, related by plaintiff, was: "He told Ralph Curtis I was fired for stealing wrenches." Warren testified: "I talked to Curtis in the presence of Parr; no one else was present. I called Curtis aside so I could talk to him privately. Parr was right there with us. I told Curtis that I wanted to let Parr go, that I caught him taking a wrench."

Plaintiff in rebuttal testified: "I heard the testimony of Mr. Warren to the effect that as I was getting out of the truck that noon he observed me putting something into the pocket of my jacket and afterwards put some gloves in the pocket. When I was getting out of the truck my gloves was falling out; as I opened the door I put my gloves in my pocket. I did not put anything else in my pocket but the gloves. I did not put something else in first. I was sitting in the truck there smoking a cigarette. It was a windy day and I got in there out of the wind. I noticed Jimmy Warren when I got out of the truck. He was sitting in his car. I should say Jimmy was about 50 or 60 feet away. The back of the truck was toward Jimmy, so that from where he was all that could be observed was what could be seen through the rear window. The first I knew anything about any wrench or gloves being missing was when Mr. Warren come out and accused me of it."

It is the contention of the defendants that the undisputed evidence placed the alleged slanderous remarks and the occasion of the utterance in the class of a qualified privilege under the provisions of subdivision 3 of section 99, R. C. 1919, that, when a publication is qualified privilege, there can be no recovery without proof of actual malice, and that the evidence herein fails to establish any malice on the part of the defendant James Warren.

The questions that arise in the consideration of this appeal are: (1) Was the alleged communication of one of qualified privilege? (2) If the statements alleged to have been slanderous came within the class of qualifiedly privileged communication, was there any evidence to prove malice? "Slander is a false and unprivileged publication, other than libel, which: 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime. * * *" Section 98, Rev. Code 1919. The communication under this statute must be unprivileged to constitute actionable slander. "A privileged communication is one made: * * * 3. In a communication, without malice, to a person interested therein, by one who is also interested therein, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information." Section 99, Rev. Code 1919. This provision is merely declaratory of the general doctrine of qualified privilege which exists independently of any statute. McLean v. Merriman, 42 S. D. 394, 175 N. W. 878.

"A communication to be privileged must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." Newell on Slander and Libel (4th Ed.) § 343.

"Whether a communication is or is not privileged does not depend so much on the manner or form in which crime is imputed, where the alleged slander consists as here of a charge of crime, as on the occasion and circumstances under which the charge is made. If made in good faith in reference to a matter in which the person making it is immediately interested, and for the purpose of protecting his interest and in the belief that it is true and without any malicious motive, the communication is what is termed privileged; that it, the occasion and the circumstances under which

it is made are held to be such as, if nothing more appears, to excuse or justify the statements that are made." Christopher v. Akin, 214 Mass. 332, 101 N. E. 971, 972, 46 L. R. A. (N. S.) 104.

The case of Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, 344, 20 L. R. A. 440, contains the following statement of the rule: "The question is not whether the charge is true or false, nor whether the defendant had sufficient cause to believe that the plaintiff sent the letter, or acted hastily, or in a mistake, but the question is, the occasion being privileged, whether there is evidence for the jury that he knew or believed it to be false. The defendant may have arrived at conclusions without sufficient evidence, but the privilege protects him from liability on that ground until the plaintiff has overcome the presumption of good faith by proof of a malicious purpose to defame her character, under cover of the privilege."

▮ This court has held that, where an alleged defamatory communication is shown to have been qualifiedly privileged, the burden is on the plaintiff to prove actual malice. Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233; Egan v. Dotson, 36 S. D. 459, 155 N. W. 783, Ann. Cas. 1917A, 296; McLean v. Merriman, supra.

▮▮ Applying these principles, we conclude that the conversations between the parties were had on such an occasion and under such circumstances as to render the same qualifiedly privileged communications. The evidence is undisputed that defendant Warren saw plaintiff during the noon hour in the cab of a truck used and driven by another employee; that he saw plaintiff leave the cab and place something in his pocket; and that soon thereafter he learned that a wrench and a pair of gloves were missing from the cab. The evidence indicates that Warren believed that these articles were stolen, and the undisputed evidence tends to show that the charge was made in good faith. The alleged slanderous statements of the plaintiff were communications upon a matter in which both plaintiff and defendants were interested, and were made only in the immediate presence of interested parties. The first conversation was in the presence of another employee, William Bridge, who operated the truck and who informed defendant Warren of the alleged theft of the wrench and gloves from the truck. Warren later stated his reasons

for the discharge of the plaintiff to Curtis, who was the superintendent under whom plaintiff was employed. There was some disagreement, however, with reference to the proximity of Renshaw during the first conversation. Plaintiff testified that "Renshaw was standing about two feet from me and Bridge was about the same distance." Warren stated in his testimony that the distance was forty or fifty feet. Bridge testified that the conversation was had at a distance of seventy-five feet from the lumber pile where Renshaw was working. Renshaw was not a witness, and there was no direct evidence that he heard the conversation. A defendant cannot come under the protection of the rule of a qualified privilege and will not be heard to say that he acted in good faith if he has given utterance to a slanderous communication with unnecessary publicity. A slanderous statement, however, incidentally overheard by a by stander does not remove the communication from the protection of the privilege; this, in itself, does not indicate a malicious intent. Fahr v. Hayes, 50 N. J. Law, 275, 13 A. 261; McKenzie v. Wm. J. Burns Detective Agency, 149 Minn. 311, 183 N. W. 516. See, also, note, Ann. Cas. 1917E, 699.

There was no evidence that the accusation by defendant Warren was made by reason of ill will towards the plaintiff, or that it was prompted by any improper motive or made carelessly and with undue publicity. The action must necessarily fail for want of proof of actual malice.

The judgment and order appealed from are reversed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.