**Tim PETERSON, Plaintiff and Appellant,**

v.

**CITY OF MITCHELL, South Dakota, a municipal corporation; Douglas Kirkus, an individual; and Dennis Kaemingk, an individual, Defendants and Appellees.**

No. 18016.

Supreme Court of South Dakota.

Considered on Briefs March 18, 1993.

Decided May 5, 1993.

James D. Taylor of Taylor & Miskimins, Mitchell, for plaintiff and appellant.

Michael J. Schaffer and Marie Hovland of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellees.

PER CURIAM.

Tim Peterson (Peterson) appeals a summary judgment for the City of Mitchell, Douglas Kirkus (Kirkus) and Dennis Kaemingk (Kaemingk) in a defamation action stemming from an erroneous press release issued by the Mitchell Police Department. We affirm.

### FACTS

In 1989, Peterson was a student at a vocational technical school in Mitchell, South Dakota. He also worked at a local Kmart Store. During the time he resided in Mitchell, Peterson became acquainted with an individual named Mike Stauffacher. At approximately 4:00 p.m. on January 19, 1989, Peterson was arrested by the Mitchell Police Department as an accessory to the offense of intentional damage to property. The arrest was related to an incident in which Peterson had been in Mike Stauffacher's company when Stauffacher used a BB gun to shoot a window out of an office building.[1]

After the arrest, Peterson was taken to the county courthouse in Mitchell for questioning. Peterson was also given a subpoena to appear before the county grand jury on January 20, 1989. The grand jury did not indict Peterson and, the state's attorney dismissed the charges against him on January 23, 1989.

Kaemingk was the captain of detectives for the Mitchell Police Department and was on vacation the week of January 16 to January 23, 1989. When Kaemingk returned on January 23, Kirkus, the police chief, instructed him to put together a press release and advise the media on the arrests that had been made in connection with the series of thefts and vandalisms that had been going on in Mitchell during the previous six or seven months. On January 24, Kaemingk met with the arresting officers to discuss the arrests. Based on the information obtained from the officers, Kaemingk prepared the following news release:

DATE: 1–24–89

TO: NEWS MEDIA

FROM: CAPT. KAEMINGK MPD

REFERENCE TO BURGLARIES, THEFTS AND VANDALISMS.

THE MITCHELL POLICE DEPT. HAS CLEARED UP THE FOLLOWING BURGLARIES, THEFTS & VANDALISMS.

---

1. Stauffacher eventually spent time in the penitentiary for a series of vandalism and theft incidents that had been going on in Mitchell.

| | | |
|---|---|---|
| 7–31–88 | Moonlight Bar | |
| 8–31–88 | Moonlight Bar | $1,500. |
| 7–13–88 | Spa 80 | 150. |
| 6 vehicle burglaries | | 5,000. |
| 7–23–88 | Thefts of Flags | 1,000. |
| 12–30–88 | Theft of tires | 400. |

Vandalisms

| | | |
|---|---|---|
| 12–31–88 | State Theater | 150. |
| 1–19–89 | Larson Liq. | 150. |
| 12–12–88 | NWPS | 300. |
| | | $8,625. |

Arrested were:

| | | |
|---|---|---|
| Mike Stauffacher | 22 y.o.a. | 310–1/2 N. Main |
| Jason Vining | 18 y.o.a. | 1401 S. Main # 47 |
| Tim Peterson | 22 y.o.a. | Mitchell, S.D. |

Investigation is continuing and other warrents [sic] are pending.

The Mitchell Police Dept. has recovered to date approx. $2,400.

The people who were arrest[ed] were indicted by a Davison County Grand Jury.

| | | |
|---|---|---|
| Daily Rep. | 5516 | |
| KMIT | 9667 | D. Kaemingk, Capt. |
| KORN/KQRN | 1490 | [signed] |

(emphasis added).

---

At the time Kaemingk prepared the press release, he was unaware that Peterson was not indicted by the grand jury. He called KMIT and KORN/KQRN radio stations and gave them the press release. Based upon that release, KORN/Q107 radio of Mitchell broadcast the following news story at 10:05 a.m., 12:05 p.m. and 1:05 p.m. on January 24:

TWENTY–TWO–YEAR–OLD TIM PE-TERSON OF MITCHELL HAS BEEN INDICTED BY A DAVISON COUNTY GRAND JURY ON CHARGES OF BUR-GLARY, THEFT AND VANDALISM. THE INCIDENTS INVOLVING HIM ALLEGEDLY TOOK PLACE BE-TWEEN JULY AND DECEMBER OF LAST YEAR AND RESULTED IN PROPERTY LOSS OR PROPERTY DAMAGE OF MORE THAN EIGHT–THOUSAND–DOLLARS.

Some employees of the Mitchell Kmart informed the manager that they had heard the radio report that Peterson had been indicted by the grand jury. The manager knew that Peterson had been arrested but Peterson had informed the manager that the charges were dropped. The manager contacted the Mitchell Police Department and spoke to Kaemingk who confirmed the radio reports. However, Kaemingk did tell the manager he would call him back.

After the call from the Kmart manager, Kaemingk contacted the arresting officer who was also unaware that the charges against Peterson had been dropped. Kaemingk next contacted the state's attorney's office and was informed by the state's attorney that he had dismissed the charges against Peterson and that the grand jury did not indict Peterson. On the advice of the state's attorney, Kaemingk immediately contacted KMIT and KORN/KQRN radio stations at about 3:00 p.m. Kaemingk retracted the statement that Peterson had been indicted and informed both stations that the charges against Peterson had been dismissed. Based upon Kaemingk's retraction, KORN/Q107 radio broad-

cast the following corrective news story the remainder of the day on January 24:

MITCHELL LAW ENFORCEMENT OFFICIALS HAVE NOTIFIED KORN NEWS THAT INFORMATION PROVIDED TO THE RADIO STATION EARLIER TODAY CONCERNING A GRAND JURY INDICTMENT WAS INCORRECT.

THE AUTHORITIES HAD INFORMED KORN OF GRAND JURY ACTION AGAINST 22–YEAR–OLD TIM PETERSON OF MITCHELL. THAT INFORMATION WAS INCORRECT.

ALL CHARGES AGAINST 22–YEAR–OLD TIM PETERSON OF MITCHELL WERE DISMISSED AND NO ACTION WAS TAKEN AGAINST HIM BY THE GRAND JURY.

After calling the radio stations, Kaemingk phoned the Kmart manager and apologized, telling him that the state's attorney had dismissed the charges and that the police department had not been aware of the dismissal. Kaemingk also asked the manager to have Peterson call him when he got to work that day. Peterson called Kaemingk at about 4:45 p.m. Kaemingk apologized for the misunderstanding and told him that the police department was not advised that the charges against him had been dismissed.

On July 17, 1989, Peterson caused the City of Mitchell, Kirkus and Kaemingk to be served with a summons and complaint for defamation. The three defendants filed a joint answer on August 16, 1989. The answer asserted that the three defendants had acted in good faith and without malice toward Peterson and that they had operated under a reasonable and honest belief that their publication of the information concerning Peterson was true.

On January 23, 1992, Peterson filed a motion for partial summary judgment on the issue of liability. On March 26, 1992, the City of Mitchell, Kirkus and Kaemingk filed their own motion for summary judgment. The motions were heard on May 11, 1992. On May 20, the circuit court entered its order granting the defense motion for summary judgment. The same day, the circuit court entered a summary judgment for all three defendants and dismissed Peterson's complaint with prejudice. Peterson appeals.

## ISSUE

DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT FOR THE CITY OF MITCHELL, KIRKUS AND KAEMINGK?

The standards for reviewing a summary judgment are well established:

Summary judgment proceedings are not a substitute for trial and the remedy is authorized only when the movant is entitled to judgment as a matter of law because there are no issues of material fact. The moving party has the burden to clearly show that no genuine issues of material fact exist. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party opposing a motion for summary judgment must present specific facts which demonstrate the existence of genuine, material issues for trial; mere allegations are not sufficient to preclude summary judgment. Finally, on appeal, affirmance of a summary judgment is proper if there exits any basis which would support the trial court's ruling.

*Mackintosh v. Carter,* 451 N.W.2d 285, 286 (S.D.1990) (citations omitted).

The circuit court determined that the press release issued by Kaemingk was subject to a qualified privilege necessitating a showing that the release was issued with malice in order to sustain a defamation action. The circuit court further determined that Peterson had failed in any showing of malice sufficient to overcome the qualified privilege. Accordingly, the circuit court granted the defense motion for summary judgment. Peterson contends that the circuit court erred in ruling that malice must be shown by a private individual in a defamation action in order to overcome any qualified privilege enjoyed by law enforcement officials in issuing press releases. He asserts that the negli-

gent and reckless act of Kaemingk in failing to do minimal research and verify issuance of the indictment subjects all three defendants to liability for defamation. We disagree.

■ The facts of this matter are relatively undisputed. The initial argument centers on the existence of any "privilege" protecting the defendants from liability for defamation flowing from issuance of the press release. Questions on the existence of any such privilege are for the court and, therefore, are freely reviewable. *Bego v. Gordon,* 407 N.W.2d 801 (S.D.1987).

Defamation is either libel or slander. SDCL 20–11–2. Both libel and slander are statutorily defined as "unprivileged" publications. SDCL 20–11–3, 20–11–4. Thus, if a communication is "privileged," it cannot constitute defamation of an individual. SDCL 20–11–5 defines those communications which are considered "privileged" and therefore outside the scope of the definitions of libel or slander. The statute provides:

A privileged communication is one made:
(1) In the proper discharge of an official duty;
(2) In any legislative or judicial proceeding, or in any other official proceeding authorized by law;
(3) In a communication, *without malice,* to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;
(4) By a fair and true report, *without malice,* of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

In the cases provided for in subdivisions (3) and (4) of this section, malice is not inferred from the communication or publication.

SDCL 20–11–5 (emphasis added).

Privileged communications created by subdivisions (1) and (2) of SDCL 20–11–5 are absolute and remain privileged whether made with or without malice. The privileged communications created by subdivisions (3) and (4) of SDCL 20–11–5 are "qualified" because the communication is only "privileged" if it is made, "without malice." *See, McLean v. Merriman,* 42 S.D. 394, 175 N.W. 878 (1920) (difference between qualified and absolute privilege is that malice destroys the first but does not affect the latter). The circuit court concluded the press release at issue in the present case was subject to the qualified privilege created by subdivision (3) of SDCL 20–11–5. We agree.

In *McLean, supra,* this Court was required to determine whether the publisher of an article concerning the director of the campaign against the women's suffrage amendment was subject to a qualified privilege under the statutory precursor to SDCL 20–11–5(3). This Court followed the following test:

An infallible test in determining whether a communication published under the particular circumstances is or is not privileged is to ask whether, if true, *it is a matter of proper public interest* in relation to that with which it is sought to associate it.

*McLean,* 42 S.D. at 399, 175 N.W. at 880 (emphasis added). Concluding that it was certainly a matter of proper public interest to know who was backing the campaign against the suffrage amendment, this Court held that the communication was, indeed, subject to a qualified privilege.

More recently, this Court was required to determine whether notes from a parents' meeting concerning the performance of a school superintendent were privileged under SDCL 20–11–5(3) when the notes were later turned over to the school board. We reasoned:

[A] qualified privilege exists for a communication between interested individuals, if made without malice.

Our first line of inquiry, then, should be to determine if the communication involved was between interested individuals.... It does not take an exercise in deep logic to conclude that parents of

children attending school in a district under the supervision of [the superintendent] are "interested" individuals as regards [the superintendent's] effect on that school district.... The parties at the January 9, 1978, meeting all are within the realm of "interested" individuals. We find all [the parents] interested in the communication herein involved.

*Uken v. Sloat,* 296 N.W.2d 540, 542–43 (S.D.1980).

■ In view of these precedents, we conclude that the citizens of Mitchell had no less common, public interest in the apprehension of those responsible for the recent wave of thefts and vandalisms than the electorate had in the motives of the campaign director in *McLean* or the parents had in the superintendent's performance in *Uken.* To paraphrase *Uken,* it would be preposterous to foreclose law enforcement officials from discussing community affairs that vitally affect the welfare of the citizens. For that reason, we hold that the City, Kirkus and Kaemingk were entitled to a qualified privilege in issuing the press release based upon the common interest provision in SDCL 20–11–5(3).

Having established that the communication at issue was subject to the common interest privilege in SDCL 20–11–5(3), we must next determine whether the communication was made with malice that would negate the privilege. *Tibke v. McDougall,* 479 N.W.2d 898 (S.D.1992); *Mackintosh, supra.*

> A "qualified or conditional privilege may be lost when the speaker, on an otherwise privileged occasion, publishes false and defamatory matter concerning another which either (a) he in fact does not believe to be true or (b) has no reasonable grounds for believing it to be true." ... However, a specific showing of malice is required for purposes of raising a genuine issue of a material fact.... Because malice cannot be presumed, the party bearing the burden of proof must establish that there was a reckless disregard for the truth on the part of the accused. "The real test of whether a defendant's conduct is reckless so as to

constitute actual malice is whether he 'in fact entertained serious doubts as to the truth of his publications.' "

*Tibke,* 479 N.W.2d at 905–906 (citations omitted).

■ In this instance, Peterson's sole contention concerning the existence of malice is that Kaemingk negligently failed to verify his indictment before issuing the press release. However, it is settled that proof of a reckless disregard for the truth establishing malice requires more than proof of a defendant's failure to investigate. *Janklow v. Viking Press,* 459 N.W.2d 415 (S.D. 1990). Although Peterson cites *Egan v. Dotson,* 36 S.D. 459, 155 N.W. 783 (1915) for the proposition that failure to investigate does constitute malice, that part of the holding of *Egan* was overruled in *Hackworth v. Larson,* 83 S.D. 674, 685, 165 N.W.2d 705, 711 (1969):

> In *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, it was held that statements made with personal malice and without reasonable grounds to believe them true were not sufficient to show reckless disregard because even where personal malice is present defeasance of the protection cannot be based on unreasonableness or mere negligence....
>
> Plaintiffs take the position that AP's failure to make a further investigation into the matter before disseminating its dispatch constitutes malice. This was their only contention in this area in argument and for which they submitted proof in resistance of the motion for summary judgment. This view has been rejected by the U.S. Supreme Court. In New York Times it held that the failure of defendant to investigate the validity of statements was constitutionally insufficient to show reckless disregard.

■ Based upon the foregoing, we hold that the press release issued by Kaemingk was subject to a qualified privilege under SDCL 20–11–5(3). Peterson failed to offer any evidence of malice sufficient to overcome that privilege and sustain his defamation action. In fact, the record evidence

regarding the immediate retraction of the press release and Kaemingk's apology to Peterson goes far in establishing that the press release was issued without malice. Given the absence of any specific showing of malice, Peterson has failed to raise a genuine issue of material fact for trial. The summary judgment for the City, Kirkus and Kaemingk is affirmed. *Uken, supra; Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983).

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., participating.

WUEST, J., disqualified.