1996 SD 72

Sharon PETERSEN, Plaintiff
and Appellant,

v.

Mike DACY, Diane Dacy, Scott Anshutz,
and Julie Anshutz, dba Mr. G's, D & A
Properties, Daschutz, A and D Proper-
ties, and Dacy/Anshutz, and Cheryl
Cerny, as Manager of Mr. G's and Indi-
vidually, All Jointly and Severally, De-
fendants and Appellees.

No. 19388.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1996.

Decided June 19, 1996.

Gwendolyn LaPrath, Gregory, for plaintiff
and appellant.

Robert B. Anderson of May, Adam,
Gerdes, & Thompson, Pierre, for defendants
and appellees.

GILBERTSON, Justice.

[¶ 1] Sharon Petersen appeals the partial
summary judgment granted to Defendants in
a defamation and slander action brought by
Petersen. We affirm.

## FACTS AND PROCEDURE

[¶ 2] Sharon Petersen worked as a clerk at Mr. G's, a convenience store/gas station, from October 1991 to May 17, 1994. Petersen's duties at Mr. G's required her to sell scratch lottery tickets to the store's customers. On May 17, 1994, Petersen was terminated from her job at Mr. G's by Cheryl Cerny, the store manager. Cerny discharged Petersen in Cerny's office, alone and with the door closed, after Petersen failed to satisfactorily explain why lottery tickets were missing during Petersen's work shifts at Mr. G's. It was later determined Cerny believed Petersen had failed to properly account for over $300 and possibly as much as $1500 in scratch lottery tickets between May 12 and May 15, 1994. Petersen has consistently claimed, and the Department of Labor's Unemployment Division has concluded, that Petersen did not steal scratch lottery tickets from Mr. G's.[1]

[¶ 3] Cerny discussed Petersen's termination with three of Mr. G's store clerks. She also discussed it with Petersen's husband, a part-time employee of Mr. G's, when the subject was initiated by Petersen's husband. No third parties were present during these discussions.

[¶ 4] Petersen brought an action against the owners of Mr. G's and Cerny claiming defamation and wrongful termination. Defendants moved for summary judgment which Petersen resisted by motion and supporting documents. The circuit court granted Defendants' motion for partial summary judgment on counts one through eight, inclusive, all defamation claims. The court's order was declared to be a final judgment pursuant to SDCL 15-6-54(b). The circuit court did not dismiss count nine, the wrongful termination claim. The circuit court based its judgment on its determination that all of the alleged defamatory communications were subject to the conditional privilege established in SDCL 20-11-5(3), that no genuine issue of material fact existed, and that Defendants were entitled to judgment as a matter of law. Petersen appeals.

1. The Department of Labor proceeding addressed Petersen's request for unemployment benefits. The findings of that hearing do not

## STANDARD OF REVIEW

[¶ 5] Our standard of review on a motion for summary judgment is well established. In reviewing a grant or denial of summary judgment,

'we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.'

*Trippet Special Trust v. Blevins,* 1996 SD 29 ¶ 6, 545 N.W.2d 216, 221 (quoting *BankWest, N.A. v. Groseclose,* 535 N.W.2d 860, 863 (S.D. 1995)).

## ANALYSIS AND DECISION

[¶ 6] Defamation is either libel or slander. SDCL 20-11-2. Both are statutorily defined as unprivileged communications. SDCL 20-11-3, 20-11-4. If a communication is privileged, it cannot constitute defamation and is not actionable. *Peterson v. City of Mitchell,* 499 N.W.2d 911, 915 (S.D. 1993). SDCL 20-11-5 provides the statutory definition of privileged communication. SDCL 20-11-5(3) provides:

A privileged communication is one made: [i]n a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information[.]

affect the outcome of this litigation as the issues are different.

The statute further provides that, under the subsection quoted above, "malice is not inferred from the communication or publication."

[¶ 7] In reviewing appeals brought under SDCL 20–11–5(3), we have stated our first line of inquiry is to determine whether the communication involved was between interested individuals. *Peterson*, 499 N.W.2d at 915 (quoting *Uken v. Sloat*, 296 N.W.2d 540, 542–43 (S.D.1980)). " 'An infallible test in determining whether a communication . . . is or is not privileged is to ask whether, if true, it is a matter of proper public interest in relation to that with which it is sought to associate it.' " *Id.* (quoting *McLean v. Merriman*, 42 S.D. 394, 399, 175 N.W. 878, 880 (1920)). We have also cited the Restatement (Second) of Torts with approval in determining whether the communication was made to an interested person:

> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

*Sparagon v. Native American Publishers, Inc.*, 1996 SD 3, ¶ 27, 542 N.W.2d 125, 132 (quoting *Tibke v. McDougall*, 479 N.W.2d 898, 905 (S.D.1992) (quoting Restatement (Second) of Torts § 596)).

[¶ 8] We next must determine whether the communication was made with malice, which would negate the privilege. *Peterson*, 499 N.W.2d at 916 (citing *Tibke*, 479 N.W.2d 898 and *Mackintosh v. Carter*, 451 N.W.2d 285 (S.D.1990)). Because malice may not be inferred under the statute, there must be a specific showing of malice which requires proof of reckless disregard for the truth or actual malice. " 'The real test of whether a defendant's conduct is reckless so as to constitute actual malice is whether he in fact entertained serious doubts as to the truth of his publications.' " *Tibke*, 479 N.W.2d at 906 (quoting *Uken*, 296 N.W.2d at 543). " 'Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.' " *Janklow v. Viking Press*, 459

N.W.2d 415, 419 (S.D.1990) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968)). This Court has long held that the plaintiff has the burden of proving actual malice that destroys the privilege. *Sparagon*, 1996 SD 3 at ¶ 25, 542 N.W.2d at 132; *Parr v. Warren–Lamb Lumber Co.*, 58 S.D. 389, 393, 236 N.W. 291, 293 (1931).

[¶ 9] In the present case, the evidence shows the communication was made by Cerny to four employees of Mr. G's, including Petersen's husband. Three of these employees were told by Cerny of Petersen's dismissal immediately after it had occurred, either as they checked the work schedule and found Petersen was not scheduled to work, or to generally inform them of Petersen's dismissal. One of these employees was working the same shift at the time Petersen was dismissed. Cerny informed this employee immediately during that shift. Petersen's husband, a part-time employee of Mr. G's, was informed of the basis for Petersen's termination when he directly confronted Cerny about it the following day.

[¶ 10] In *Uken*, 296 N.W.2d at 543, we addressed the question of who is an "interested individual" for purposes of SDCL 20–11–5(3). In that case, we determined that parents of school children enrolled in the school district in which Uken was the superintendent were "interested individuals" as regards Uken's effect on that district. We also found that teachers and administrators had a legitimate right to be concerned with the operations of the school and, therefore, were "interested individuals." We did not base our analysis in *Uken* on a "need to know" urged by Petersen on appeal.

[¶ 11] In *Parr*, 58 S.D. 389, 236 N.W. 291, under facts similar to those now before us, we reversed judgment for a plaintiff who was employed by defendant lumber company and accused by the defendant of theft in the workplace. In reversing the judgment, we found defendant employer's communication was protected by the qualified privilege pursuant to the precursor statute to SDCL 20–11–5(3). In that case, the communication was made in the presence of a co-worker of the accused employee and later, to the ac-

cused employee's supervisor. We found that "[t]he alleged slanderous statements ... were communications upon a matter in which both plaintiff and defendants were interested, and made only in the immediate presence of interested parties." *Id.* at 293. The evidence further showed the employer believed the items were stolen, he believed plaintiff to be the person who stole them, and that "the charge was made in good faith." *Id.*

[¶ 12] We find in the present case that Petersen's co-workers were "interested individuals" for purposes of SDCL 20–11–5(3) in that they were naturally concerned with the operation of the store and the effect of Petersen's departure. For one, the departure of any employee acting as a store clerk would create a gap in the work schedule that the co-workers would be called upon to fill. For another, the perceived reason for Petersen's dismissal, shortages of lottery tickets on her shift, would serve as a warning to other workers charged with selling lottery tickets as part of their duties to honestly and carefully keep track of these sales. We also note Petersen acknowledged in deposition testimony that had a co-worker of hers disappeared from Mr. G's work force, she would have wanted to know why and would have appreciated someone from the store informing her.

[¶ 13] Having determined that the co-workers informed of Petersen's dismissal were "interested persons," we next determine whether the communication by Cerny was made with malice. Under the statute, malice may not be inferred and Petersen must establish there was a reckless disregard for the truth on the part of Cerny. *Uken,* 296 N.W.2d at 543. "Not only must a defendant entertain serious doubts as to the truth, but the evidence must permit the conclusion that the defendant actually had a high degree of awareness of probable falsity." *Janklow,* 459 N.W.2d at 419 (citing *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)). SDCL 15–6–56(e) provides in relevant part: "[w]hen a motion for summary

judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in § 15–6–56, must set forth specific facts showing that there is a genuine issue for trial."

[¶ 14] We find no evidence of malice has been shown in this case. Although the Department of Labor concluded in its hearing on Petersen's unemployment benefits that she did not steal the lottery tickets in question, this is not the test of whether Cerny *believed* that Petersen stole the tickets when Cerny communicated as much to Petersen's co-workers. Petersen has offered no proof that Cerny did not believe, at the time she made the communication to the four Mr. G's employees, that Petersen stole the tickets.[2] Further, in her deposition testimony, Petersen admits to knowing no reason why Cerny would knowingly falsely accuse her of theft. The circuit court, in its bench decision, noted that its review of the Department of Labor hearing tapes provides "clearly undisputed evidence" that Cerny made the communication in the good faith belief that Petersen took the lottery tickets during her shift. Although Petersen claims Cerny should have performed a more prudent investigation regarding the missing lottery tickets before accusing Petersen, we have previously held that failure to investigate does not constitute malice. *Peterson,* 499 N.W.2d at 916; *Janklow,* 459 N.W.2d at 421; *Williams v. Hobbs,* 81 S.D. 79, 83, 131 N.W.2d 85, 88 (1964); *see also N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 288, 84 S.Ct. 710, 730, 11 L.Ed.2d 686, 711 (1964).

[¶ 15] Petersen further rests her defamation claim on remarks allegedly made by clerks of Mr. G's and overheard by various customers at the store. She has not brought an action against these unnamed clerks. Moreover, Petersen's claim has no support in the law as we long ago stated that "[a] slanderous statement ... incidentally over-

---

2. Cerny and the workers were never deposed as to what Cerny told the shift workers after Cerny terminated Petersen. Thus, we are unable to tell if the workers were informed that the reason for Petersen's dismissal was inability to accurately account for the lottery tickets and sales proceeds (negligence) or outright theft. Petersen's testimony concerning her dismissal quotes Cerny as stating the reason for Petersen's termination was negligence rather than theft.

heard by a bystander does not remove the communication from the protection of the privilege; this, in itself, does not indicate a malicious intent." *Waln v. Putnam,* 86 S.D. 385, 196 N.W.2d 579, 584 (1972); *Parr,* 236 N.W. at 293.

[¶ 16] Petersen cannot now claim a better version of facts that she provided in her own deposition testimony and she "cannot now claim a material issue of fact which assumes a conclusion contrary to [her] own testimony." *Lalley v. Safway Steel Scaffolds, Inc.,* 364 N.W.2d 139, 141 (S.D.1985). The circuit court acknowledged in its bench decision that Petersen's own testimony supported a grant of summary judgment to Defendants. Finding no genuine issue of material fact exists and that Defendants are entitled to judgment as a matter of law, we affirm.

[¶ 17] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 18] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 19] I dissent on the basis that the language of this opinion places the burden on Petersen to show that there is a genuine issue of material fact as to malice, when the burden should properly be upon the defendants to show the absence of genuine issues of material fact. *Dept. of Revenue v. Thiewes,* 448 N.W.2d 1, 2–3 (S.D.1989). If Cerny had no basis in fact to advise "interested persons" that "Petersen stole lottery tickets" rather than "mismanaged lottery sales on her shift," there would be an issue of fact whether her conduct constitutes malice.[3] The circuit court judge is jumping into the jury box and rushing to *summary judgment.* Whatever happened to court and jury trials?

3. Cerny testified at the Department of Labor hearing that:
   Q:  Did you tell the other clerks why you dismissed Mrs. Petersen?
   A:  ... I think I probably did ...
   Q:  What did you tell them?
   A:  I told them that we were missing lottery tickets.
   Q:  And that you thought she stole them?
   A:  Yeah.
   The tape recording of this hearing was included in the settled record.